**KRAFTCO CORPORATION, a Delaware Corporation, Plaintiff-Appellant,**

v.

**Alan N. CHARNES, as the Executive Director of the Department of Revenue, Defendant-Appellee.**

No. 79CA0867.

Colorado Court of Appeals, Div. I.

July 23, 1981.

Rehearing Denied Aug. 20, 1981.

Certiorari Denied Nov. 23, 1981.

---

C. E. Eckerman, and Gorsuch, Kirgis, Campbell, Walker & Grover, James H. Turner, Denver, for plaintiff-appellant.

J. D. MacFarlane, Atty. Gen., Mary J. Mullarkey, Sol. Gen., Chris J. Eliopulos, Asst. Atty. Gen., Denver, for defendant-appellee.

COYTE, Judge.

Plaintiff (Kraftco) appeals the judgment of the trial court upholding the validity of a jeopardy assessment issued by the Department of Revenue (Department). We affirm in part and reverse in part.

Kraftco is a Delaware corporation engaged in the manufacture and sale of dairy and other food products. These dairy and food products are sold throughout the United States, including Colorado.

Kraftco is the owner of stock in a number of foreign subsidiary corporations who manufacture, and obtain or sell dairy and other food products in foreign countries. Different dairy and food products are sold in different market areas, depending on local preference. There are limited exports or imports between Kraftco and its subsidiaries.

Kraftco receives interest principally from investments of accumulated earnings in commercial paper, certificates of deposits, and loans. Kraftco receives royalties principally from its foreign subsidiaries for the use of its trademarks, trade name, and patents. Kraftco receives rental income principally from the leasing of idle and surplus property and from leasing ice cream cabinets. Kraftco receives capital gains from the sale of idle and surplus property. Kraftco receives dividends resulting principally from its ownership of shares in foreign subsidiaries.

In its Colorado income tax returns for the tax years at issue, 1969, 1970, and 1971, Kraftco stated its federal taxable income, but subtracted rent receipts, royalties, capital gains, interest, and dividends to arrive at what it considered to be its total apportionable income for Colorado tax purposes, pursuant to the Multistate Tax Compact (Compact) § 24–60–1301, Art. IV, C.R.S. 1973.

On November 4, 1975, the department appointed the Multistate Tax Commission (MTC) its agent to audit plaintiff for all years open to audit and assessment. Plaintiff requested that the examination begin after April 30, 1976, and the MTC agreed. However, plaintiff was requested to execute waivers of the statute of limitations against assessment of the additional taxes for the years 1969 and 1970. When plaintiff did not execute the waivers, the department threatened suit. No waivers were executed and on February 10, 1976, the department issued its order asserting a total amount of tax and interest due of $44,-160.97 for the years 1969, 1970, and 1971.

The tax assessment served on the plaintiff by the defendant was determined by adding back to Kraftco's computation of Colorado apportionable income, a percentage of rent receipts, royalties, capital gains, interest, and dividends.

## I

■ Plaintiff contends that the trial court erred in concluding that Kraftco did not cooperate with the department. We disagree.

The trial court concluded that:

"It would be difficult to imagine any more flagrant example of 'conduct calculated to inhibit the collection of taxes by the Department' than that of the plaintiff in this case. Requests for appointments with the plaintiff by MTC for the purpose of selecting a time to conduct the audit in question were not answered squarely. The tenor of the correspondence between MTC and the plaintiff between October 7, 1975 and December 10, 1975 was one of delay on the part of the plaintiff. And there is no other way to interpret the acts of the plaintiff ignoring three separate pleas from MTC to execute waivers for the years 1969 and 1970 than intentional delay on the part of the plaintiff to a time when the statute of limitations had run on these two years."

There is evidence in the record to support the findings and conclusions of the trial court relative to the lack of cooperation of plaintiff, and they are binding on appeal. *Linley v. Hanson*, 173 Colo. 239, 447 P.2d 453 (1970).

## II

■ Plaintiff contends that the trial court erred in basing its decision on § 39–21–111(1), C.R.S.1973, which relates to the closing of the "taxable" period rather than on § 39–21–111(2), C.R.S.1973, which relates to the period in which the assessment may be made.

These statutory subsections provide:

"(1) If the executive director of the department of revenue finds that collection of the tax will be jeopardized by delay, in his discretion, he may declare the taxable period immediately terminated, determine the tax, and issue notice and demand for payment thereof; and, having done so, the tax shall be due and payable forthwith, and the executive director may proceed immediately to collect such tax as provided in section 39–21–114.

"(2) In any other case wherein it appears that the revenue is in jeopardy, the executive director of the department of revenue may immediately issue demand for payment; and, regardless of the provisions of sections 39–21–103 and 39–21–105, the tax shall be due and payable forthwith and, in his discretion, the executive director may proceed immediately to collect said tax as provided in section 39–21–114."

Assuming without deciding that plaintiff is correct in its reading of this statute, we find no reversible error here since we conclude the trial court reached the correct result, even if for the wrong reason. *Metropolitan Industrial Bank v. Great Western Products Corp.*, 158 Colo. 198, 405 P.2d 944 (1965), *Klipfel v. Neill*, 30 Colo.App. 428, 494 P.2d 115 (1972). Since the trial court, on supporting evidence, properly termed the plaintiff to be a "non-cooperative corporation," whose conduct had placed the collection of taxes in jeopardy, under either section (1) or (2) of this statute, it was proper for the Department to issue a jeopardy assessment against plaintiff. Furthermore, under these facts, there is no merit to plaintiff's contention that the word "jeopardy" is unconstitutionally vague.

## III

Plaintiff contends that the trial court erred in finding that the statute of limitations for assessing additional Colorado tax for 1969 and 1970 would have expired on February 25, 1976. We agree as to the 1969 taxes.

*1969*

There had been a federal audit of 1970 and 1971 tax years and a tax liability had been determined for 1970 and 1971. For 1971, the IRS had determined that plaintiff had an excess of foreign tax credit which could not be used in 1971. This credit was carried back to 1969. This 1969 credit was then offset by an adjustment relating to a 1969 depreciation error.

Section 39–21–107(2), C.R.S.1973, provides that the assessment of tax shall be made within one year after the time for assessing a deficiency in federal income tax. Even if we assume, without deciding, that this 1969 adjustment was in effect an assessment of a deficiency, the assessment date in the IRS revenue agent's report (RAR) was January 21, 1975. There is no evidence of any waiver or extension agreement beyond this date. Since the Colorado notice of jeopardy assessment was issued February 10, 1976, this assessment was not made within one year of the time for assessing a federal deficiency, and thus was barred by the statute.

In determining that the statute of limitations would end on February 25, 1976, one year from the date Kraftco sent the department the RAR for 1969, 1970, and 1971, the trial court was in effect basing its determination on § 39–22–601(6)(c), C.R.S.1973, which provides:

"If, from such report or return or from investigation, it appears that the tax with respect to income imposed by this article has not been fully assessed, the executive director shall, within one year after the receipt of such report or within one year of discovery of such final determination, if unreported, assess the deficiency with interest at the rate prescribed in section 39–22–621."

However, this section is not an exception to the general statute of limitations, § 39–21–107(2). This section merely allows the director to assess a deficiency only to the extent of the information contained in the RAR. There is uncontradicted evidence in the record that Kraftco had been assessed and had paid the deficiency in its Colorado

taxes resulting from the updated revenue agent's report and that the additional Colorado taxes arising from the jeopardy assessment were not based on the federal adjustment.

Thus, the trial court erroneously upheld the department's jeopardy assessment for 1969. Accordingly, this part of the order of the court must be reversed and the matter remanded for a new order deleting the 1969 tax year from the jeopardy assessment against plaintiff.

*1970*

It is undisputed that Kraftco's federal waiver gave the department until December 31, 1976, to make adjustments for Colorado purposes. Section 39–22–601(6)(e), C.R.S.1973. Thus, the trial court erred in finding that the statute of limitations for the taxable year 1970 would run on February 25, 1976. However, since the issuance of the jeopardy assessment on February 10, 1976, for 1970 was not barred by the statute of limitations, the trial court did not err in considering 1970 as an open year.

**IV**

Plaintiff contends that throughout the trial, the court made numerous errors in its rulings regarding the admissibility of evidence which require that a new trial be granted. We disagree.

Even if there was error in the rulings of the trial court in the admission of certain evidence, there is nothing in its findings or conclusions which suggest that the trial court relied on the erroneously admitted evidence. There being other competent evidence to sustain the trial court's findings, the admission of this evidence is not grounds for reversal. *See Vanadium Corp. v. Wesco Stores Co.*, 135 Colo. 77, 308 P.2d 1011 (1957); *Short v. Downs*, 36 Colo.App. 109, 537 P.2d 754 (1975).

**V**

Plaintiff contends that the trial court erred in upholding the jeopardy assessment when the jeopardy assessment by

the department was computed incorrectly. We disagree.

First, Kraftco contends that the trial court erred in finding that it was an integrated company whose income from tangible and intangible properties was business income apportionable to Colorado subject to the Compact. We disagree.

Under the Compact, income from interest, rents, royalties, capital gains, and dividends are subject to apportionment if it is business income.

Section 24–60–1301, Art. IV 1(a), C.R.S. 1973, defines business income as:

"income arising from transactions and activity in the regular course of the taxpayer's trade or business and includes income from tangible and intangible property if the acquisition, management, and disposition of the property constitute *integral parts of the taxpayer's regular trade or business operations.* (emphasis added)

All other income is non-business income. Section 24–60–1301, Art. IV 1(e), C.R.S. 1973.

"The test of an integrated business is whether or not the operation of a portion of the business within the state is dependent upon or contributory to the operation of the business outside the state." *Joslin Dry Goods Co. v. Dolan*, Colo., 615 P.2d 16 (1980). The test of business income applicable here is whether the income results from a transaction in the regular course of the company's business. *Atlantic Richfield Co. v. State*, 198 Colo. 413, 601 P.2d 628 (1979). Under these tests and the evidence before it, the trial court properly concluded that:

"Kraftco's total apportionable income, including income from interest, rents, royalties, capital gains, and dividends, arose from the regular course of Kraftco's business including the manufacture, distribution, and marketing of dairy and food products; from the development and marketing of trademarks, trade names, and patents; from the renting or sale of surplus or idle property used in the business; and, from the investment of surplus funds in subsidiaries or in commercial paper, certificates of deposits and

loans. It is also evident that the management and disposition of this income were integral parts of Kraftco's business.

. . . . .

Because of these business activities, undertaken by Kraftco in the conduct of the entirety of its business, profits are generated which are, in turn, used by Kraftco to maintain, administer and expand its total business operation."

Kraftco's evidence of different subsidiary products, daily local control, and "almost no" business transactions between itself and its foreign subsidiaries, is insufficient to prove unrelated business activity on the part of its subsidiaries in the light of the underlying reality of Kraftco's world-wide food enterprise discussed above. *See Mobil Oil Corp. v. Commissioner of Taxes*, 445 U.S. 425, 100 S.Ct. 1223, 63 L.Ed.2d 510 (1980).

■ Kraftco also contends that the department arbitrarily computed its tax liability based on a sales ratio which did not accurately reflect the ratio of Colorado's population to the population of the United States. We disagree.

Under the Compact, Colorado's share of apportionable business income is determined by the ratio that a company's Colorado share of property, payroll, and sales bears to the company's total property, payroll, and sales. Section 24–60–1301, Art. IV 9 through 17, C.R.S.1973. The sales ratio is a fraction, the numerator of which is the total sales of the taxpayer in Colorado and the denominator is the total sales of the taxpayer everywhere during the tax period. Section 24–60–1301, Art. IV 15, C.R.S.1973. Although Kraftco's tax returns contained what Kraftco had concluded were its Colorado sales, in the absence of a field audit of Kraftco's return, the department determined that Kraftco's Colorado sales were 1.2% of Kraftco's total sales.

■ There was testimony that this sales ratio, which did not accurately reflect the actual population ratio of Colorado to the entire United States, was a reliable ratio

tested in the cases of other consumer products companies, including food products, which more accurately reflected the higher consumption of consumer food products in a tourist state like Colorado. The findings of the trial court that the ratio was reasonable under the circumstances is supported by the evidence in the record and will not be disturbed on appeal. *Linley v. Hanson, supra.*

Kraftco also contends that the department failed to include in Kraftco's sales and property returns the values of the transactions and property generating the income that the department considered in its jeopardy assessment to be business income. In determining Kraftco's jeopardy assessment, the department used the information available to it at the time which was the information contained in Kraftco's tax returns. Kraftco failed at trial to introduce evidence regarding these transactions and this property and thus failed to sustain its burden as to this issue. *See* § 39–21–105(2)(b), C.R.S. 1973.

Our examination of the record reveals that plaintiff's other contentions are without merit.

The judgment is reversed as to the jeopardy assessment for 1969, but is affirmed as to the jeopardy assessments for the years 1970 and 1971, and the cause is remanded to the trial court with directions to delete the 1969 tax year from the jeopardy assessment against plaintiff.

STERNBERG, J., concurs.

BERMAN, J., concurs in part and dissents in part.

BERMAN, Judge, concurring in part and dissenting in part.

I agree with the majority opinion in all respects except as to that portion of part III dealing with the 1969 assessment of taxes. In my view the 1969 assessment was properly made pursuant to the law.

The trial court correctly relied upon § 39–22–601(6)(c), C.R.S.1973, in determining that the statute of limitations to make an assessment for the 1969 taxes did not expire until February 25, 1976. The majori-

ty, however, insists that this section is not an exception to § 39–21–107(2). To arrive at this conclusion they overlook or ignore fundamental canons of statutory interpretation.

Section 39–22–601(6), C.R.S.1973, provides in pertinent part:

(a) Any final determination of federal income made pursuant to the provisions of federal law under which federal taxable income is found to differ from the taxable income originally reported to the federal government *shall be reported by the taxpayer to the executive director [of the Colorado Department of Revenue] within thirty days of such final determination* with a statement of the reasons for the difference, in such detail as the executive director may require.

. . . . .

(c) If, from such report or return or from investigation, it appears that the tax with respect to income imposed by this article has not been fully assessed, *the executive director shall, within one year after the receipt of such report . . . assess the deficiency* with interest prescribed in section 39–22–621. (emphasis added)

Section 39–21–107(2), C.R.S.1973, upon which the majority relies as a "general statute of limitations" provides in pertinent part:

In the case of income tax imposed by article 22 of this title, . . . the assessment of tax, penalties, and interest shall be made within one year after the expiration of the time provided for assessing a deficiency in federal income tax . . . .

It is fundamental that the meaning of any one section of a statute must be gathered from a consideration of the entire legislative scheme, *State Hwy. Comm'n v. Haase,* 189 Colo. 69, 537 P.2d 300 (1975), and that two statutes concerning the same subject matter must be read together, *People in Interest of M. K. A.,* 182 Colo. 172, 511 P.2d 477 (1973). Another fundamental rule of construction is to give effect to every word of an enactment if possible. *Johnston v. City Council,* 177 Colo. 223, 493 P.2d 651

(1972). In other words, courts should not presume that the general assembly used language in a statute idly and with no intent that meaning should be given to its language. *Blue River Defense Comm. v. Town of Silverthorne*, 33 Colo.App. 10, 516 P.2d 452 (1973).

The majority's interpretation of its so-called "general statute of limitations" reads out of existence the underlined portions of the phrase "the executive director shall, <u>within one year after the receipt of such report</u> ...." It also does violence to § 2–4–205, C.R.S.1973, which provides:

If a general provision conflicts with a special or local provision, it shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail.

I also disagree with the majority's statement that § 39–21–107(2), C.R.S.1973, "merely allows the director to assess a deficiency only to the extent of the information contained in the RAR." It creates a limitation on § 39–21–107(2) for which there is no justification and it ignores the 1977 amendment which added subsection (6)(g) which seemingly permits the very thing the majority contends is in the section before the 1977 amendment. *See* Session Laws 1977, p. 1799 § 1 (now contained in the 1980 Cum.Supp.). Indeed, a literal reading of subsection (6)(c) reveals just the contrary of the majority's statement. It seems clear that if it appears "from such report or from *investigation*" the tax has not been paid, the executive director shall assess the deficiency.

For the foregoing reasons I would affirm this judgment of the trial court in its entirety.