### HEWLETT–PACKARD COMPANY, a California corporation, Plaintiff–Appellee,

v.

### STATE of Colorado, DEPARTMENT OF REVENUE, and Alan Charnes, as Executive Director, Defendants–Appellants.

No. 85SA340.

Supreme Court of Colorado, En Banc.

Jan. 11, 1988.

Rehearing Denied Feb. 8, 1988.

Monte Pascoe, John H. Evans, David P. Temple, Ireland, Stapleton, Pryor & Pascoe, P.C., Denver, for plaintiff-appellee.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Chris J. Eliopulos, Sp. Asst. Atty. Gen., General Legal Services Section, Denver, for defendants-appellants.

Eugene F. Corrigan, Gen. Counsel, Multistate Tax Com'n, Boulder, amicus curiae.

MULLARKEY, Justice.

The Colorado Department of Revenue appeals from an order of the district court granting Hewlett–Packard Company's motion for summary judgment. We reverse and remand for further proceedings consistent with this opinion.

## I.

Hewlett–Packard Company ("HP") is a California corporation doing business in Colorado. HP and its affiliates manufacture and market precision electronic instruments and equipment, computer systems, and various other related products. HP is a multi-national business which operates throughout the United States and has subsidiaries throughout the world. At the time this case arose, HP had five domestic subsidiaries in the United States and twenty-five foreign subsidiaries incorporated in twenty-three countries outside the United States. For purposes of this opinion, "foreign subsidiary" means a subsidiary incorporated in a country other than the United States. HP conducts extensive activities within Colorado including manufacturing, research and development, and sales. For the tax years in question, the fiscal years beginning November 1, 1972, and ending October 31, 1978, HP filed Colorado corporate income tax returns on a separate accounting basis. Under this method, separate corporations file separate tax returns regardless of affiliations with other corporations. Thus, HP filed its Colorado tax return without regard to any income of its foreign or domestic subsidiaries.

The Colorado Department of Revenue ("Department") audited HP's books and records and made assessments of additional tax on HP in the total amount of $1,643,-020.00. In arriving at its assessment figures, the Department used a combined accounting method. The combined method, also known as unitary apportionment, is based on a recognition that an integrated business may operate through several separately incorporated entities. In such case, transactions between corporations under common control may lack economic substance; therefore, it is necessary to consider the corporate group as a whole. This method combines the income of all related business entities which are engaged in the same integrated or unitary business to arrive at a net income base. A percentage of this net income base is then apportioned to the relevant taxing jurisdiction according to a formula which measures the contribution of the business activities within the taxing jurisdiction (*e.g.*, Colorado) to the profit of the entire unitary business. This percentage of the net income base, rather than the entire net income base, is then taxed by the state. *See, e.g.*, McCray, *Applying Federal Income Attribution Concepts at the State Level*, Multistate Tax Commission Review, November 1985, at 9, 11.

The purpose of unitary apportionment is to fairly apportion to the taxing state its share of the unitary business' income attributable to the unitary business' operations in that state. It is important to note that application of the unitary apportionment method does not necessarily result in a greater tax liability for a corporation than would result from the separate accounting method. In *Caterpillar Tractor Co. v. Lenckos*, 84 Ill.2d 102, 49 Ill.Dec. 329, 417 N.E.2d 1343 (1981), *appeal dismissed sub nom. Chicago Bridge & Iron Co. v. Caterpillar Tractor Co.*, 463 U.S. 1220, 103 S.Ct. 3562, 77 L.Ed.2d 1402 (1983), for instance, the plaintiff corporations had argued at administrative hearings that unitary apportionment should have been applied to each of the plaintiffs in five of the six tax years in question. The state agreed, thus reducing the plaintiffs' tax liability for those years.[1] Likewise, in de-

---

**1.** The state, however, applied unitary apportionment for all six tax years in question and denied certain deductions claimed by the plaintiffs. The plaintiffs appealed solely on the grounds that unitary apportionment should not have been applied in the one disputed tax year and that the state erred in denying the claimed deductions. Sixteen corporations were allowed to intervene, claiming instead that unitary apportionment was not authorized in any circum-

bate on changes to the Colorado corporate taxing statutes, members of the Colorado General Assembly have recognized that use of combined reporting could decrease a corporation's state tax liability. *Hearings on H.B. 1010 before the Senate Finance Committee*, 55th Gen. Assembly, 1st Reg. Sess. (April 2, 1985).

The Department thus included all HP affiliates, including its foreign subsidiaries, engaged in the same unitary business related to HP's activities in Colorado, in a combined report to calculate a net income base. A percentage of the net income base was apportioned to Colorado, pursuant to section 39–22–303, 16 C.R.S. (1973), by multiplying the net income base by the proportion of HP's sales and property within Colorado to HP's total sales and property. This figure, HP's net income, was then taxed at the appropriate corporate tax rates.

The Department later issued a final determination upholding each of the assessments and adding $1,066,842.00 in interest through October 2, 1984. HP appealed the Department's final determination to the district court for a *de novo* determination of its Colorado taxable income. HP filed a motion for summary judgment in the district court based on its argument that the Colorado statutory definition of corporate net income as federal taxable income prohibits the inclusion of the income of HP's foreign subsidiaries in HP's net income base. The district court granted HP's motion for summary judgment. The Department filed an appeal and this court accepted jurisdiction of the case.

## II.

The United States Supreme Court has upheld unitary apportionment in many different contexts. Several of its decisions demonstrate that there is no constitutional barrier to state taxation of foreign subsidiaries. The Court has upheld New York's taxation of a British corporation, *Bass, Ratcliff & Gretton, Ltd. v. State Tax Comm'n*, 266 U.S. 271, 45 S.Ct. 82, 69 L.Ed. 282 (1924), Vermont's taxation of a New York corporation's "foreign source"

stances under the applicable Illinois statutes.

dividend income received by such corporation from its subsidiaries and affiliates doing business abroad, *Mobil Oil Corp. v. Commissioner of Taxes*, 445 U.S. 425, 100 S.Ct. 1223, 63 L.Ed.2d 510 (1980), and California's taxation of a Delaware corporation's overseas subsidiaries, *Container Corp. of America v. Franchise Tax Bd.*, 463 U.S. 159, 103 S.Ct. 2933, 77 L.Ed.2d 545, *reh'g denied*, 464 U.S. 909, 104 S.Ct. 265, 78 L.Ed.2d 248 (1983). Consistent themes running through these and other opinions are that the form of a business organization may have nothing to do with the underlying unity or diversity of the business enterprise, *Container Corp. of America*, 463 U.S. at 168, 103 S.Ct. at 2941; *Mobil Oil Corp.*, 445 U.S. at 440, 100 S.Ct. at 1233, that the income of a business is not immune from fairly apportioned state taxation, *e.g.*, *Mobil Oil Corp.*, 445 U.S. at 436, 100 S.Ct. at 1231, *Northwestern States Portland Cement Co. v. Minn.*, 358 U.S. 450, 458–462, 79 S.Ct. 357, 362–364, 3 L.Ed.2d 421 (1959), and that the source of income does not preclude its taxability, *Mobil Oil Corp.*, 445 U.S. at 438, 100 S.Ct. at 1232, *see, e.g.*, *Butler Bros. v. McColgan*, 315 U.S. 501, 506–508, 62 S.Ct. 701, 703–704, 86 L.Ed. 991 (1942). The Court has stated that unitary apportionment is a "proper and fair method of taxation [that] happens, however, to be quite different from the method employed ... by the Federal Government in taxing ... business...." *Container Corp. of America*, 463 U.S. at 184, 103 S.Ct. at 2950.

Colorado has likewise upheld unitary apportionment. *Lone Star Steel Co. v. Dolan*, 668 P.2d 916 (Colo.1983); *Joslin Dry Goods Co. v. Dolan*, 200 Colo. 291, 615 P.2d 16 (1980); *Union Pacific R.R. v. Heckers*, 181 Colo. 374, 509 P.2d 1255, *appeal dismissed*, 414 U.S. 806, 94 S.Ct. 74, 38 L.Ed.2d 42 (1973); *Kraftco Corp. v. Charnes*, 636 P.2d 1300 (Colo.App.1981). This court has approved domestic unitary apportionment which combined the income of the taxpayer corporation with its parent corporation and other subsidiaries of the parent corporation. *Joslin Dry Goods Co.*,

49 Ill.Dec. at 334, 417 N.E.2d at 1348.

615 P.2d at 19. We have also upheld the inclusion in the taxpayer corporation's net income base of dividends from a Delaware subsidiary of the taxpayer corporation operating in Texas; this base was then apportioned and taxed. *Lone Star Steel Co.*, 668 P.2d at 922, 924. We have held that a company's internal accounting techniques are not binding on a state for tax purposes, *Lone Star Steel Co.*, 668 P.2d at 925 (quoting *Exxon Corp. v. Department of Revenue*, 447 U.S. 207, 221, 100 S.Ct. 2109, 2119, 65 L.Ed.2d 66 (1980)); *see Joslin Dry Goods Co.*, 615 P.2d 16, and that there is no reason to find different results based simply on different formal business structures, a consequence which is inevitable without use of the unitary method, *Joslin Dry Goods Co.*, 615 P.2d at 20 (quoting *Caterpillar Tractor Co. v. Lenckos*, 77 Ill.App.3d 90, 99, 32 Ill.Dec. 786, 794, 395 N.E.2d 1167, 1175 (1979), *aff'd*, 84 Ill.2d 102, 49 Ill.Dec. 329, 417 N.E.2d 1343 (1981), *appeal dismissed sub nom. Chicago Bridge & Iron Co. v. Caterpillar Tractor Co.*, 463 U.S. 1220, 103 S.Ct. 3562, 77 L.Ed. 2d 1402 (1983)).

### III.

HP concedes that HP and its subsidiaries, including its foreign subsidiaries, constitute a unitary business under the applicable state and federal constitutional standards. In this court, HP has not challenged the Department's authority to combine the income of HP's domestic subsidiaries to determine its net income base; the Department's authority to do so was settled by *Joslin* and related cases. However, we have not previously addressed the tax treatment of foreign subsidiaries of a unitary business. The only issue presented by this case, therefore, is whether the Department is precluded by Colorado's corporate taxing statutes from including income of the foreign subsidiaries of a unitary business in a combined report.

HP relies upon section 39–22–304(1), 16 C.R.S. (1973), as the basis for its argument that the Department acted without authority in including HP's foreign subsidiary income in HP's net income base. Section 39–22–304(1) defines net income, for Colorado corporate income tax purposes, as "federal taxable income, as defined in the internal revenue code," with certain modifications not applicable here. HP asserts, without objection from the Department, that its foreign subsidiaries had no federal taxable income during the relevant tax years. Thus HP argues that, pursuant to section 39–22–304(1), the income of its foreign subsidiaries should not have been included in its combined report.

Although HP's argument has a certain surface appeal, it ignores other statutory sections which provide for a much broader view of taxable income. Section 39–22–301(1), 16 C.R.S. (1973), which imposes Colorado's corporate income tax on "net income ... derived from sources within Colorado," further states that "[i]ncome from sources within Colorado includes ... income from any activities carried on in this state, regardless of whether carried on in intrastate, interstate, or foreign commerce." Section 39–22–303(5), 16 C.R.S. (1973), states: "In case of two or more corporations, whether domestic or foreign, owned or controlled directly or indirectly by the same interests, the executive director may distribute or allocate the gross income and deductions between or among such corporations ... in order to ... clearly reflect income." This court held in *Joslin Dry Goods Co.*, 615 P.2d at 19, that section 39–22–303(5) provides for alternative "methods which the [D]epartment is authorized to employ in order to carry out the legislative intent to 'tax all the income that Colorado can constitutionally tax,'" (quoting *Coors Porcelain Co. v. Colo.*, 183 Colo. 325, 329, 517 P.2d 838, 840 (1973), *cert. denied*, 419 U.S. 874, 95 S.Ct. 136, 42 L.Ed.2d 113 (1974)), "by taxing 'the net income of every corporation derived from sources within this state.'" (quoting *General Motors v. Colo.*, 181 Colo. 360, 364, 509 P.2d 1260, 1262 (1973)). Thus, it is apparent that the definition of net income in section 39–22–304(1) is a starting point. It may be controlling in the context of a single corporation doing business only in Colorado because the other statutory provisions cited above do not come into play.

But it is not the end of the analysis in the case of a unitary business operating throughout the United States and abroad.

Other courts have been confronted with a state's application of unitary apportionment in the context of similar statutory schemes. In *Bass, Ratcliff & Gretton, Ltd.*, New York statutes provided for an annual franchise tax upon the net income of foreign manufacturing and mercantile corporations. This net income was "presumably the same" as federal net income, subject only to correction for fraud, evasion, or errors. *Bass, Ratcliff & Gretton, Ltd.*, 266 U.S. at 277, 45 S.Ct. at 82. The plaintiff, an English corporation engaged in brewing and selling Bass' ale, did all of its brewing and a large part of its sales in England. A portion of its product was sold in the United States through branch offices in New York and Chicago. For the tax year in question, it had no federal net income. Nevertheless, New York apportioned the company's entire net income, and applied its state tax. The United States Supreme Court held that New York was justified in apportioning the income from the entire unitary business and stated that "[t]he fact that the Company may not have had any net income upon which it was subject to payment of income tax to the Federal Government, obviously does not show that it received no net income from the business which it carried on in New York." *Bass, Ratcliff & Gretton, Ltd.*, 266 U.S. at 282–283, 45 S.Ct. at 84.

At issue in *Caterpillar Tractor Co. v. Lenckos*, 84 Ill.2d 102, 49 Ill.Dec. 329, 417 N.E.2d 1343 (1981), *appeal dismissed sub nom. Chicago Bridge & Iron Co. v. Caterpillar Tractor Co.*, 463 U.S. 1220, 103 S.Ct. 3562, 77 L.Ed.2d 1402 (1983), was the inclusion of domestic and foreign subsidiaries of the taxpayer corporation in a unitary group for apportionment purposes. The applicable Illinois statute defined taxable income for corporate taxation purposes as "taxable income properly reportable for federal income tax purposes ... under the provisions of the Internal Revenue Code." Ill.Ann. Stat. ch. 120, § 2–203(d)(1) (Smith–Hurd 1974). Despite this, the Illinois Supreme Court upheld apportionment based on the combined worldwide business income of Caterpillar Tractor and its twenty-five domestic and foreign subsidiaries and did not limit apportionable income to federal taxable income. Similarly, the Montana Supreme Court has approved unitary apportionment based upon a unitary group which included two wholly-owned subsidiaries domiciled and operating in foreign countries, *Montana Dep't of Revenue v. American Smelting and Refining Co.*, 173 Mont. 316, 567 P.2d 901 (1977), *appeal dismissed*, 434 U.S. 1042, 98 S.Ct. 884, 54 L.Ed.2d 793 (1978), despite the statutory definition of gross income, the starting point in determining state corporate tax liability, as "the corporation's federal income tax liability," Revised Codes of Montana § 84–1504(2) (1947), *as amended by* 1963 Mont. Laws ch. 186, § 3.

This court decided a similar issue in *Joslin Dry Goods Co.* Joslin had filed its Colorado corporate income tax returns on a separate accounting basis. The Department determined that Joslin was part of a unitary business and, in computing Joslin's corporate taxes, employed a combined accounting report based upon the unitary operation of Joslin with its parent corporation. Although Joslin did not raise the distinct claim at issue here, *i.e.*, that the statutory definition of net income limits a corporation's net income base to its federal taxable income, it did argue that the Colorado taxing statutes precluded the use of unitary apportionment.

We held that pursuant to section 39–22–303(5), the Department may distribute or allocate the income of corporations owned or controlled by the same interests if it concludes that that is the most effective method of taxing all the income that Colorado can constitutionally tax. *Joslin Dry Goods Co.*, 615 P.2d at 19. We also held that combined reports were authorized since combined reports do allocate or apportion income. *Joslin Dry Goods Co.*, 615 P.2d at 18. The effect of such holdings was to approve an application of the unitary method which included income which was not Joslin's federal taxable income in Joslin's net income base. The income of

Joslin's parent corporation was clearly not included in Joslin's federal taxable income. This income, however, was charged to Joslin's net income base, which base was then apportioned and taxed by Colorado.

■ The same result must be reached whether the corporations included in the unitary group are domestic or foreign. In either case, the Department is including income, which is not included in the taxpayer corporation's federal taxable income, in that corporation's net income base. HP's interpretation of the Colorado taxing statute would compel a distinction between foreign and domestic corporations when defining the limits of a unitary group and calculating a corporation's net income base. We see no valid reason to make such a distinction and decline to do so.

HP relies on *Kellogg Co. v. Herrington*, 216 Neb. 138, 343 N.W.2d 326 (1984), and *Polaroid Corp. v. Commissioner of Revenue*, 393 Mass. 490, 472 N.E.2d 259 (1984), in support of its position.[2] We note first that, although the statutory scheme interpreted in *Kellogg Co.* did use federal taxable income as a basis for the state's corporate franchise tax, Neb.Rev.Stat. § 77–2734(2) (Reissue 1981), it did not contain provisions similar to sections 39–22–301(1) and 39–22–303(5), 16 C.R.S. (1973). *See* Neb.Rev.Stat. §§ 77–2734 to 77–2752 (Reissue 1981). Second, the literal analysis utilized by the Nebraska Supreme Court in *Kellogg Co.* invalidates any use of unitary apportionment, including domestic, and mandates a different result from that reached by this court in *Joslin Dry Goods Co.* Finally, the result reached in *Kellogg Co.* has been criticized as "decided by reference to state income tax attribution principles which were not properly applied [and] [t]herefore ... lack[ing] any precedential value," Dexter, *Comment on Kellogg v. Herrington*, Multistate Tax Commission Review, November 1985, at 13, 18, and as "a hybrid formula that lacks internal uniformity" resulting in "questionable conclusions," Comment, *Unitary Taxation: An Analysis of State Taxation of Multijurisdictional Corporations in Nebraska*, 64 Neb.L.Rev. 135, 174 (1985). The Nebraska legislature apparently entertained similar doubts as to the soundness of the decision and repealed and reenacted, with significant modifications, the relevant statutory provisions. 1984 Neb.Laws, LB 1124.[3]

Likewise, the Massachusetts court's decision in *Polaroid Corp.* was based on a detailed statutory, legislative, and judicial history quite unlike that of Colorado. *See* 472 N.E.2d at 264–66. To the extent the court reached the issue of apportionment of income which is not includable in federal taxable income, the court's decision is dicta. *See* 472 N.E.2d at 264, n. 10. Finally, like the analysis of the Nebraska court, the reasoning of the Massachusetts court would invalidate all attempts at unitary apportionment and cannot be reconciled with our result in *Joslin Dry Goods Co.*

Our holding is further supported by the statutory history of the Colorado corporate taxing statutes. For approximately twelve years, the Colorado General Assembly has been regularly and fully advised of the Department's use of the unitary apportionment method. In 1985, the General Assembly amended section 39–22–303 by adding subsections 8 through 12. Although this amendment was not effective in the tax

---

**2.** In *Kellogg Co.*, the state argued that an apportionment formula should be applied considering only property, sales, and payroll in the United States while the plaintiff argued that its worldwide property values, sales and payroll should be used. The Nebraska court held that, although the state was limited to apportioning only Kellogg's federal taxable income, the apportionment formula must relate Kellogg's Nebraska property, sales, and payroll to its worldwide property, sales, and payroll. 343 N.W.2d at 332. Thus, the state could not apportion income from Kellogg's foreign subsidiaries but was required to consider these foreign subsidiaries in deciding what percentage of Kellogg's federal taxable income could be taxed.

In *Polaroid Corp.*, the Massachusetts court struck down the state's use of unitary apportionment in assessing additional corporate excises against the plaintiff corporations.

**3.** The reenacted Nebraska taxing statutes provide, *e.g.*, that the apportionment formula shall consider "only the part of a unitary group that is subject to the Internal Revenue Code." Neb. Rev.Stat. § 77–2734.05(3) (Reissue 1986).

years at issue, such legislative action is instructive on the question of legislative intent.

The question under debate was the Department's interpretation of the state tax laws as requiring the combined reporting of unitary businesses and the inclusion of foreign subsidiaries in the unitary group. Legislative debate recognized that there were desirable aspects of unitary apportionment and established that the legislature had no intention of abolishing the unitary method. *Hearings on H.B. 1010 before the Senate Finance Committee,* 55th Gen. Assembly, 1st Reg.Sess. (April 2, 1985). In addition, at an earlier interim meeting of a legislative committee which heard testimony from government and business officials regarding unitary apportionment, a possible conflict was noted between the corporate taxing statutes' definition of net income and the statutory apportionment formula's broader language encompassing all sources. Representatives from the Department stated that no such conflict existed and that their interpretation of the corporate taxing statutes did not prevent them from apportioning income on the basis of total worldwide income. *Hearings of the Committee on Business Issues,* 54th Gen. Assembly, 2d Reg.Sess. (July 31, 1984).

The legislature recognized the Department's interpretation and, although the inclusion of foreign subsidiaries' income was limited by the 1985 amendments, it was expressly approved in certain situations. The new section 39–22–303(8), 16B C.R.S. (1987 Supp.), provides that if eighty percent or more of a corporation's property and payroll is assigned to locations outside of the United States, that corporation's income cannot be included in a combined report. The new subsection (12)(c) specifically authorizes the inclusion in the combined report of the income of a corporation which has more than twenty percent of its property and payroll assigned to locations inside the United States. § 39–22–303(12)(c), 16B C.R.S. (1987 Supp.).

The position advanced by HP would result in the exclusion of all income which is not federal taxable income from any apportionment method. This would be a much more sweeping revision than that actually enacted. The General Assembly did not amend those sections of the Colorado corporate taxing statutes, sections 39–22–301(1) and 39–22–303(5), which we had previously found to be the authority for the Department's use of combined reports. *Joslin Dry Goods Co.,* 615 P.2d at 18. Nor did it amend the definitional section 39–22–304(1) which HP construes as prohibiting the inclusion of the income of foreign subsidiaries. The General Assembly, instead, explicitly authorized the use of combined reports and recognized that income from foreign corporations may be included in such reports.

The construction of statutes by administrative officials charged with their enforcement should be given deference by a reviewing court. *E.g., Trinity Universal Ins. Co. v. Hall,* 690 P.2d 227 (Colo.1984); *City & County of Denver v. Industrial Comm'n,* 690 P.2d 199 (Colo.1984); *Colorado Ass'n of Pub. Employees v. Lamm,* 677 P.2d 1350 (Colo.1984). This construction is entitled to even greater deference when the administrative interpretation is longstanding. *King v. Bergland,* 517 F.Supp. 1363 (D.Colo.1981); *see Schlagel v. Hoelsken,* 162 Colo. 142, 425 P.2d 39, *cert. denied,* 389 U.S. 827, 88 S.Ct. 81, 19 L.Ed. 2d 83 (1967); *Bowman v. Eldher,* 149 Colo. 551, 369 P.2d 977 (1962). When a legislature has reenacted or amended a statute, a failure to repeal the agency's interpretation is persuasive evidence that the administrative interpretation was intended by the legislature. *E.g., NLRB v. Bell Aerospace Co.,* 416 U.S. 267, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974); *King v. Bergland,* 517 F.Supp. 1363 (D.Colo.1981); *Schlagel,* 425 P.2d at 42.

Similarly, the General Assembly is presumed cognizant of the judicial precedent in a particular area when it enacts legislation in that area. *E.g., Rauschenberger v. Radetsky,* 745 P.2d 640 (Colo.1987); *Thompson v. People,* 181 Colo. 194, 510 P.2d 311 (1973); *Smith v. Miller,* 153 Colo. 35, 384 P.2d 738 (1963). When a statute is

amended, the judicial construction previously placed upon the statute is deemed approved by the General Assembly to the extent that the provision remains unchanged. *E.g., Radetsky,* 745 P.2d 640; *In re Estate of Daigle,* 634 P.2d 71 (Colo. 1981); *Music City, Inc. v. Estate of Duncan,* 185 Colo. 245, 523 P.2d 983 (1974); *see Kern v. Gebhardt,* 746 P.2d 1340 (Colo. 1987). Given the legislature's awareness of the Department's longstanding practice, as well as its knowledge of our decision in *Joslin,* we must conclude it did not intend the interpretation advanced by HP.

The order of the district court is reversed and the case is remanded to such court for further proceedings consistent with this opinion.

ROVIRA, J., dissents, and
KIRSHBAUM, J., joins in the dissent.

ROVIRA, Justice, dissenting:

At the outset, it is important to keep in mind the precise issue at the heart of this appeal. Hewlett–Packard (HP) does not contest the use by the Colorado Department of Revenue (Department) of the unitary apportionment or combined accounting method of corporate taxation, even if used to reach the foreign subsidiaries of a domestic corporation. As the majority notes, and HP concedes, the United States Supreme Court has on many occasions upheld in the wake of constitutional challenge, the use by a state of unitary apportionment, particularly in the context of a state's attempt to use a combined accounting method for unitary businesses comprised of both domestic and foreign subsidiaries. *See, e.g., Bass, Ratcliff & Gretton, Ltd. v. State Tax Comm'n,* 266 U.S. 271, 45 S.Ct. 82, 69 L.Ed. 282 (1924); *Mobile Oil Corp. v. Comm'r of Taxes,* 445 U.S. 425, 100 S.Ct. 1223, 63 L.Ed.2d 510 (1980); *Container Corp. of Am. v. Franchise Tax Bd.,* 463 U.S. 159, 103 S.Ct. 2933, 77 L.Ed.2d 545, *rehearing denied,* 464 U.S. 909, 104 S.Ct. 265, 78 L.Ed.2d 248 (1983).

Nor does HP challenge the authority of the Department to apply the unitary apportionment scheme to the activities of a unitary business and thereby require a combined report for the corporate parent and its subsidiaries, which this court has upheld in the past. *See, e.g., Lone Star Steel Co. v. Dolan,* 668 P.2d 916 (Colo.1983); *Joslin Dry Goods Co. v. Dolan,* 200 Colo. 291, 615 P.2d 16 (1980); *Union Pacific Railroad v. Heckers,* 181 Colo. 374, 509 P.2d 1255, *appeal dismissed,* 414 U.S. 806, 94 S.Ct. 74, 38 L.Ed.2d 42 (1973); *Kraftco Corp. v. Charnes,* 636 P.2d 1300 (Colo.App.1981).

The sole issue is whether the Department can include in HP's Colorado tax base the income of HP's foreign subsidiaries, which is not federal taxable income as defined in the Internal Revenue Code. The majority's presentation of the basic issue, in effect, begs the question. At 403. Whether the Department is precluded from including income of the foreign subsidiaries of a unitary business in a combined report can only be answered by first considering the definition of net income as set out in section 39–22–304(1), 16 C.R.S. (1973).

The determination of the tax liability of a unitary business under the Colorado Income Tax Act requires a three step process: (1) the Department determines the entire net income of a unitary business; (2) part of the entire net income is apportioned to Colorado; (3) that portion of the net income attributable to Colorado, *i.e.,* Colorado taxable income, is then multiplied by the applicable tax rate. The only question for review concerns the first prong of the analysis: What is the net income to which the apportionment formula is applied?

Section 39–22–301(1), 16 C.R.S. (1973), imposes a tax upon "each domestic corporation and foreign corporation doing business in Colorado annually in an amount equal to five percent of the net income of such corporation during the year derived from sources within Colorado...." Net income is defined in section 39–22–304(1) as "the corporation's federal taxable income, as defined in the internal revenue code for the taxable year ...," with certain modifications not relevant here. If the corporation derives income from sources both within and without Colorado, the entire net income is then apportioned as provided in section

39–22–303, 16 C.R.S. (1973), to arrive at Colorado taxable income.

Under the Internal Revenue Code (IRC), federal taxable income does not include all income of all foreign corporations. Under 26 U.S.C. § 882(b) (1982), gross income of a foreign corporation includes only:

(1) gross income which is derived from sources within the United States and which is not effectively connected with the conduct of a trade or business within the United States, and

(2) gross income which is effectively connected with the conduct of a trade or business within the United States.

To the extent that HP's foreign subsidiaries did no business in the United States in the taxable years in question, they would, therefore, have no gross income within the meaning of IRC section 882(b), and also, no federal taxable income.[1] Accordingly, HP's foreign subsidiaries had no net income for Colorado tax purposes.

We have stated on numerous occasions that to ascertain the intent of the General Assembly in enacting a statute, words and phrases should be given effect according to their plain and obvious meaning. *Engelbrecht v. Hartford Acc. & Indem.*, 680 P.2d 231, 233 (Colo.1984); *see also Trinity Universal Insurance Co. v. Hall*, 690 P.2d 227, 230 (Colo.1984) (responsibility of the supreme court "is to give effect to a legislative enactment according to its plain and obvious meaning."). Moreover, taxing powers and taxing acts will not be extended beyond the clear import of the language used, nor will their operation be enlarged by analogy. *Assoc. Dry Goods v. City of Arvada*, 197 Colo. 491, 496, 593 P.2d 1375, 1378 (1979).

In spite of the express statutory limitations, the Department included the income of HP's foreign subsidiaries in computing HP's entire net income. The majority opinion would uphold that determination by, in effect, writing section 39–22–304(1) out of the Colorado Income Tax Act.

Thus, the majority holds that a reliance on section 39–22–304(1) "ignores other statutory sections which provide for a much broader view of taxable income," citing §§ 39–22–301(1) and 39–22–303(5), 16 C.R.S. (1973). In so holding, the majority misreads the statutory provision imposing a tax and confuses the determination of net income with the apportionment of income, a separate stage in the determination of the tax liability of a unitary business under the Colorado Income Tax Act.

Section 39–22–301(1), which imposes a corporate tax of 5 percent of net income, states that income includes "income from any activities carried on in this state, regardless of whether carried on in intrastate, interstate, or foreign commerce." But section 39–22–301(1) is qualified by section 39–22–304(1), which provides a definition of net income.

In holding that section 39–22–303(5) lends support to the Department's claim that Colorado taxable income may be determined without regard to the statutory reference to federal taxable income, the majority ignores the crucial distinction between the statutory authorization for apportionment and the definition of what income is subject to combination and apportionment.

Section 39–22–303(6) provides in relevant part:

In case of two or more corporations, whether domestic or foreign, owned or controlled directly or indirectly by the same interest, the executive director may distribute or allocate the gross income and deductions between or among such corporations or may require returns on a consolidated basis, if deemed necessary, in order to prevent evasion of taxes and to clearly reflect income.[2]

---

**1.** The Department concedes that HP's foreign subsidiaries had no federal taxable income within the meaning of 26 U.S.C. § 882(b).

**2.** In 1975, the General Assembly amended section 39–22–303(5) by deleting the words "to prevent evasion of taxes." *See* "An Act Concern-ing the Income Tax," ch. 354, sec. 1, 1975 Colo. Sess. Laws 1493 (codified at § 39–22–303(5), 16 C.R.S. (1976 Supp.)). Other than that deletion, the language of that section has remained the same, except that the provision is now codified at section 39–22–303(6), 16B C.R.S. (1982).

This section does not give the Department the right to exceed the authority granted under Colorado law to "ascertain the net income attributable to sources within Colorado in order to effectuate the intent of the legislature." *Joslin*, 200 Colo. at 297, 615 P.2d at 20. Section 39–22–303(5) merely provides that the Department may distribute or allocate the gross income and deductions in the case of two or more corporations owned or controlled by the same interest or may require consolidated returns in order to clearly reflect income.

Although section 39–22–303(5) speaks of gross income, this section does not authorize a separate method for determining taxable income when two or more controlled corporations are involved. First, Colorado gross income is defined in section 39–22–103(3), 16 C.R.S. (1973), as "federal gross income plus or minus [certain] modifications." If the income from foreign subsidiaries is not federal gross income, then the foreign subsidiaries have no gross income to be distributed or allocated under section 39–22–303(5). Second, even if the gross income of a foreign subsidiary were within the purview of section 39–22–303(5), such gross income is not subject to taxation, in that the corporate tax is imposed only on that portion of the net income apportioned to Colorado. The section in question does authorize the department to use combined accounting for unitary businesses. That authorization is merely to distribute gross income and deductions to reflect income, *i.e.,* net income. The section does not create any authorization for the inclusion of income which is not federal taxable income for a unitary business covered by a combined report.

The same analysis applies to the 1985 amendments to the apportionment section of the Colorado Income Tax Act, § 39–22–303(8) and (12)(c), 16B C.R.S. (1987 Supp.), also cited by the majority. These two provisions regulate the Department's use of the combined report in the case of a unitary business, depending upon whether that businesses' property and payroll is concentrated inside or outside the United States. Again, these two sections fall short of offering definite proof that the legislature wanted to define net income other than in the manner expressed in section 39–22–304(1), for example, by endorsing the use of a worldwide combined report. This is particularly true if, as the majority contends, the purpose of these two provisions was to ameliorate any possible conflict between the tax code's definition of net income and the language found in the apportionment statutes. In fact, these two provisions exclude from a combined report some foreign income even if it is federal taxable income, and would expressly prohibit the inclusion of the foreign income at issue in this case.

My reading of the manner in which these statutory provisions fit together does not compel a distinction between foreign and domestic corporations when defining the limits of a unitary group and calculating a corporation's net income base. Without examining the entire federal code, it is quite likely that IRC section 882(b) does not provide the last word on the federal tax liability of income from foreign subsidiaries of domestic corporations. But the issue is not our view on the efficacy of certain taxing schemes. As the Nebraska Supreme Court declared in considering this identical issue: "by attempting to combine the 'piggybacking' of the federal income tax with the provisions of the [state act], it may be that the state realized the smallest tax possible. This may be unfortunate, and not what the legislature intended, but it is, in fact, what was accomplished." *Kellogg Co. v. Herrington*, 216 Neb. 138, 343 N.W.2d 326, 332–33 (1984).

The majority opinion places strong reliance on *Joslin Dry Goods Co. v. Dolan*, 200 Colo. 291, 615 P.2d 16. In *Joslin*, the sole issue was "whether the Department could require Joslin to file a combined report in light of the language found in § 39–22–303(5)," 200 Colo. at 294, 615 P.2d at 15. In *Joslin*, we upheld the Department's determination that Joslin was part of a unitary business and, in computing Joslin's corporate taxes, could employ a combined accounting report based upon the unitary operation of Joslin and its parent corporation.

Although *Joslin* provides strong support for the Department's use of the unitary apportionment method, that case is not controlling precedent for the precise issue in the instant case. In *Joslin,* we stated that section 39–22–303(5) authorizes the Department to employ methods to "tax all the income that Colorado can constitutionally tax." Quoting *Coors v. Colorado,* 183 Colo. 325, 517 P.2d 838, 200 Colo. at 296, 615 P.2d at 19. But the issue in the instant case is the definition of net income, not the constitutional question of whether Colorado can tax corporate entities on sources of income arising outside this state. Joslin was a subsidiary of Mercantile Stores, a Delaware corporation with no foreign subsidiaries. All of the corporations for which the court authorized combined reporting had federal taxable income. No income of a foreign subsidiary was involved.

*Joslin* does not stand for the proposition that combined reporting and unitary apportionment can be applied in whatever fashion the Department wishes, regardless of the presence of federal taxable income. In fact, in upholding the Colorado statutory scheme against a challenge that the guidelines were unconstitutionally vague, we declared:

> The guidelines are found in the obligation of the corporate taxpayer to pay an income tax 'equal to five percent of the net income from sources within Colorado' (section 39–22–301(1)) and the duty of the department to ascertain the net income attributable to sources within Colorado in order to effectuate the intent of the legislature.

*Joslin,* 200 Colo. at 297, 615 P.2d at 20. The precise guideline—net income—which we found sufficient to constrain the Department in *Joslin* is the same guideline to be used as a starting point for the imposition of the tax liability of a unitary business.

Nor did we consider the inclusion of income not defined as federal taxable income in *Lone Star Steel Co. v. Dolan,* 668 P.2d at 916 (Colo.1983), also a case involving a United States parent and domestic subsidiaries. In that case, we held it proper to

include as net income the dividends paid by Lone Star's Domestic International Sales Corporation (DISC) to the parent corporation, which was federal taxable income in the hands of the parent, while not so treating the income of the DISC, which was not federal taxable income.

Some of the cases the majority relies upon are similar to *Joslin* and *Lone Star* in that they provide support for the concept of unitary apportionment in general, especially on constitutional grounds, without addressing the precise question at issue in this case. As even the majority concedes, the definition of net income is, at the least, the starting point in the analysis. Many of the cases discussed concern a state taxing scheme which defines net income differently than does Colorado, and therefore, do not present the same issue of statutory construction. For example, although in *Container Corp. v. Franchise Tax Bd.,* 463 U.S. 159, 103 S.Ct. 2933, 77 L.Ed.2d 545 (1983), the Supreme Court upheld California's application of the unitary apportionment method, noting the differences between California and the federal government's taxing methods, the Court was reviewing statutory provisions which, in defining income, do not restrict the term to federal taxable income as does Colorado. *See* California Revenue and Tax Code § 25120(a), (West 1979) ("Business income means income arising from transactions and activities in the regular course of the taxpayer's trade or business ...").

The majority dismisses the decisions of two state courts, *Kellogg,* and *Polaroid Corp. v. Comm'r of Revenue,* 393 Mass. 490, 472 N.E.2d 259 (1984), as inapposite and excessively restrictive of the authorization for unitary apportionment.

The relevance of both these cases is the presence of statutory provisions similar to section 39–22–304(1), which the Nebraska and Massachusetts courts held restricted the amount of income which the state could include in the income tax base for purposes of unitary apportionment.

In *Kellogg,* the court examined Nebraska's statutory definition of net income, which at the time was almost identical to

Colorado's, and concluded that Nebraska could not include in Kellogg's tax base the income from its foreign subsidiaries. The Nebraska statutes had defined income as "the taxpayer's federal taxable income derived from sources within the state." 343 N.W.2d at 331. For its apportionment statute, Nebraska relied upon the Uniform Act (7A ULA 93 *et seq.* 1978), analogous to section 39–22–303. As the court explained the apportionment procedure, "a franchise tax is imposed on a corporation at a prescribed rate times the corporation's *federal taxable income* apportioned in accordance with the Uniform Act.... [T]he tax base in Nebraska is defined by statute to be 'federal taxable income.'" 343 N.W.2d at 331 (emphasis in original). In speaking of the apportionment provisions of the tax code, the court declared that "[t]he Uniform Act merely apportions the tax, and does not impose any tax obligation." *Id.*

As the majority notes, Nebraska has amended its statutes in light of the *Kellogg* decision, *see* Neb.Rev.Stat. § 77–2734.05(3) (reissue 1986). This change suggests the irreconcilability of the original statutory definition of income with an intent to use an expanded definition of worldwide income as the tax base.

In *Polaroid,* the Supreme Judicial Court concluded that a provision of the Massachusetts apportionment statute, MGLA ch. 63, § 42 (West 1969), "appears to have nothing to do with determining a corporation's taxable net income but only concerns the formula used to apportion that income." 472 N.E.2d at 266. Although the court held in favor of *Polaroid* on the grounds that the commissioner could only exercise his authority to impose unitary apportionment pursuant to reasonable rules, the court noted *in dicta* that, in light of the Massachusetts definition of net income as federal gross income, *see* MGLA ch. 63, § 30(5)(a), "a statutory pattern that determines taxable income by starting with federal gross income casts doubt on the propriety of the adoption of a worldwide unitary approach in determining taxable net income." 472 N.E.2d at 264 n. 10. The court in *Polaroid* went on to note the similarities between its statute and the Ne-

braska statute under review in *Kellogg. Id.*

The majority opinion will have the effect of lessening the connection between the federal and Colorado tax codes. But specific statutory provisions make clear the legislature's intent to tie the Colorado Income Tax Act to the Internal Revenue Code. For example, section 39–22–102, 16B C.R.S. (1982), declares:

> The general assembly hereby finds and declares that it is implementing section 19 of article X of the state constitution in order to: Simplify preparation of state income tax returns; aid interpretation of the state income tax law through increased use of federal judicial and administrative determinations and precedents; and improve enforcement of the state income tax laws through better use of information obtained from federal income tax audits.

If the legislature intended to depart from this continued reliance on the federal tax code, especially by extending the definition of net income beyond federal taxable income, it seems reasonable that the legislature would have clearly and explicitly changed the definitional sections of the income tax code, rather than drawing upon implications relating to the apportionment of income, which only come into play once taxable income has been determined.

In my judgment, the majority opinion stretches too far to arrive at a conclusion inconsistent with the applicable provisions of the Colorado Income Tax Act.

Accordingly, I would affirm the judgment of the district court.

I am authorized to say that Justice KIRSHBAUM joins me in this dissent.