## No. 22847.

BEVERLY WHEELER, NEALE PINE, DONALD J. MCCOLLUM AND CHARLES A. ANDERSON, INDIVIDUALLY; MARY ARIE, LAWRENCE O. COMBS, JAMES W. DRAPER, HARRIET A. HAYES AND BONNIE REINOEHL, TAXPAYING ELECTORS OF GILPIN COUNTY, COLORADO, XEN HOSLER, E. G. BURN-KRANT, KENNETH E. BROWN, PETER T. HANSSON, FORREST E. COOK, RUTH M. JOHNSON AND SARAH BINFORD AVERY, INDIVIDUALLY AND AS MEMBERS OF THE BOARD OF EDUCA-TION OF BOULDER VALLEY SCHOOL DISTRICT NO. RE 2, BOULDER COUNTY, COLORADO; AND BOULDER VALLEY SCHOOL DISTRICT NO. RE 2, BOULDER COUNTY, COLORADO *v.* GUSTAV S. RUDOLPH, EIVEN G. JACOBSON AND LOWELL A. GRIFFITH, INDIVIDUALLY, AND FOR AND ON BEHALF OF THEMSELVES AND ALL PERSONS SIMILARY SITUATED.

(426 P.2d 762)

Decided April 24, 1967.

JOHN E. BUSH, Assistant Attorney General, YALE HUFF-MAN, RYAN, MARTIN, BROTZMAN, CAPLAN, CARRIGAN and KNAPPLE, for plaintiffs in error.

ALBERT B. DAWKINS, HOLLEY, BOATRIGHT & VILLANO, for defendants in error.

*En Banc.*

MR. JUSTICE PRINGLE delivered the opinion of the Court.

THIS matter is here on writ of error to a judgment of the trial court setting aside a detachment and annexation election involving the Gilpin County School District No. Re 1 and the Boulder Valley School District No. Re 2. Members of the Board of Education of the Gilpin County School District and the Board of Education and members of the Board of Education of the Boulder Valley School District were defendants in the trial court. These parties will hereinafter be referred to jointly as plaintiffs in error. The defendants in error are electors of Gilpin County and were plaintiffs in the trial court.

In February, 1966, the Gilpin County School Board passed a resolution requesting the annexation of a portion of the district to the Boulder Valley District because the school buildings in this portion had been declared unsafe by the Colorado Industrial Commission.

A similar resolution was passed approving the annexation by the Boulder Valley Board of Education. This matter was submitted to a vote of the qualified tax paying electors residing within the territory affected by the proposed detachment. The election was held on June 11, 1966, and the detachment and annexation was approved by a vote of 115 to 31. Approximately eighty children involved have been in regular attendance in the Boulder Valley School District since September, 1966.

Three Gilpin residents challenged this detachment and annexation election on the principal grounds that the authorizing statute did not apply to districts having less than 1500 students. A trial on the issue of the validity of the election was held on September 28, 1966.

The trial court held that under the statutes of this state no school district was eligible to participate in a detachment and annexation procedure unless it had a minimum enrollment of 1500 pupils. Thereupon, the trial court set aside the election and enjoined the parties from proceeding in any way to carry out the detachment and annexation.

It is agreed by the parties that the Gilpin County School District No. Re 1 had an enrollment of less than 1500 students at the time of the detachment and annexation proceedings and that both Gilpin County School District Re 1 and Boulder Valley School District Re 2 are "new" school districts.

▮ In our view, the sole issue to be determined here is whether the statute permits "new" districts with less than 1500 pupils to participate in a detachment and annexation procedure. We hold that it does and reverse the trial court.

The particular section of the School District Organization Act of 1965 applicable here provides in pertinent part:

"Whenever the boards of education of adjoining new school districts or of adjoining old school districts each

having a school enrollment of over fifteen hundred, deem it to be in the interest of their respective districts . . . modification of the common boundary may be made by mutual consent in the manner prescribed . . ." 1965 Perm. Supp., C.R.S. 1963, 123-25-39.

■ It is axiomatic that in construing a section of a legislative act, the whole of the act must be read together and considered as a whole and the meaning of the section must be gathered from a consideration of the entire act. *Public Util. Comm'n. v. Stanton Transp. Co.*, 153 Colo. 372, 386 P.2d 590; *Clark v. Fellin*, 126 Colo. 519, 251 P.2d 940. Applying this rule, we find that contained in the School District Organization Act of 1965 is a definition of "School Districts" which defines such as any school district organized and existing pursuant to law, exclusive of junior college districts. The legislature, therefore, if it meant to require an enrollment of 1500 pupils before *any* school district could participate in a detachment and annexation procedure, had a defined term within the act available to accomplish such purpose. Nor can it be said that the phrase in question is inadvertently used in the sentence in question, since it recurs time and time again in exactly the same words in the remainder of the paragraphs of the section dealing with detachment and annexation. Moreover, throughout the entire article whenever the legislature wishes to apply provisions of the act uniformly to "old" and "new" districts alike, it uses the term "any school district" wherever such term fits within the context of the provision.

■ It becomes quite clear that by using the terms "new" districts and "old" districts in the section in question the legislature specifically expressed its purpose to apply different qualifications to the "old" districts as compared to the "new" districts when dealing with detachment and annexation and that the legislature chose words of art to accomplish this purpose.

■ Another general rule of statutory interpretation

buttresses the construction we place on the statutory section in question. We have pointed out in *City and County of Denver v. The People*, 103 Colo. 565, 88 P.2d 89, that:

"* * * relative and qualifying words and phrases where no contrary intention appears, will be construed to refer *solely* to the last antecedent with which they are closely connected." [Emphasis added.]

██ Both rules of statutory interpretation which we have applied here result in the same construction of the statute at issue and make clear and unambiguous the legislative mandate that only "old" school districts must have an enrollment of 1500 students before they are eligible to participate in the detachment and annexation procedures provided for in 1965 Perm. Supp., C.R.S. 1963, 123-25-39.

Defendants in error contend that if it be determined, as we do, that the 1500 pupil enrollment requirement applies only to "old" school districts, then the statute is an unreasonable classification by the legislature, and consequently is a violation of equal protection.

██ Classification by a legislature is, of course, not in and of itself a denial of equal protection. The authorities overwhelmingly state the proposition that the burden is on one attacking the constitutionality of a classification by a legislature to show that it is unreasonable or arbitrary by highly persuasive, irrefragable evidence, unless it is clearly so on its face. We find nothing on the face of the act or in the record which demonstrates clearly to us that the legislature was unreasonable or arbitrary in requiring a certain minimum pupil enrollment as a prerequisite to detachment and annexation of "old" school districts and in not applying the same principle to "new" districts.

The injunction is dissolved and the judgment is reversed.

Mr. Chief Justice Moore not participating.