No. 26867

**The State Highway Commission of Colorado, a body corporate, and The Board of County Commissioners of the County of Arapahoe v. Edward N. Haase, Chief Engineer of the Division of Highways of the State of Colorado**

(537 P.2d 300)

Decided June 19, 1975.                    Addendum filed and rehearing denied June 30, 1975.

Gorsuch, Kirgis, Campbell, Walker & Grover, Joseph M. Montano, for petitioners.

Ronald S. Loser, for petitioner Board of County Commissioners of the County of Arapahoe.

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, David W. Robbins, First Assistant, Richard Phillips, Special Assistant, for respondent and The Honorable Richard D. Lamm, Governor of the State of Colorado

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

This is an original proceeding in the nature of mandamus, brought by the State Highway Commission of Colorado, hereinafter referred to as "Commission." Sought is a rule to compel Edward N. Haase, Chief Engineer of the Division of Highways of the State of Colorado, hereinafter referred to as "Chief Engineer," to carry out certain orders and directives given to him by the Commission.

The County Commissioners of Arapahoe County joined in the petition, but having no standing to ask for the relief prayed for are dismissed from the proceedings. *Board of County Commissioners v. State Board of Social Services*, 186 Colo. 435, 528 P.2d 244 (1974).

Pursuant to state and federal law, I-470 was designated a circumferential highway in southwest metropolitan Denver, as a segment of the Interstate system of highways. If this designation was to be withdrawn section 103(g) of Title 23 U.S.C. and Regulation section 476.106 of the Federal Highway Administration required withdrawal by June 17, 1974. This same section requires the state by July 1, 1975, to submit a schedule for the expenditure of funds for the construction of I-470 and assurances that I-470 will be built in accordance with the schedule. If not submitted

or if the assurances are not satisfactory, the federal law requires the Secretary of Transportation to remove I-470 from the Interstate system.

On May 21, 1975, pursuant to resolution, the Commission issued a directive and an order to the Chief Engineer to prepare and submit the schedule and assurance to the Secretary. On that same day, the Honorable Richard D. Lamm, Governor of Colorado, countermanded the Commission directive by letter to Charles Shumate, Executive Director of the State Department of Highways. The Governor issued a direct order that no schedules nor assurances be submitted to the Secretary. Also by letter to the Commission, the Governor advised that he had made a decision to seek transfer of the I-470 construction funds to mass transit programs. That letter goes on to state:

". . . I have no intention of approving any highway budget for Colorado which includes an appropriation for the proposed Interstate 470."

The Chief Engineer has refused and refuses to carry out the orders and directives of the Commission. We issued a writ to the Chief Engineer to show cause why he should not carry out the Commission resolution. Answer has been made through the Attorney General for the Chief Engineer and the Governor, who was permitted to join by express invitation from this court on its own motion. We make the rule absolute.

The resolution of what powers the Commission retains under the Administrative Organization Act of 1968 is the only issue before the court. To what extent the data ordered to be submitted meets the requirement of the Secretary is not an issue herein or attempted to be resolved herein.

The Attorney General has argued that this is one of the most important tests of executive authority since the Administrative Organization Act of 1968 (Sections 24-1-101 *et seq.*, C.R.S. 1973). This may be so. However, as will be seen from an analysis of the statutes, this problem is addressed to the legislature. It, as early as 1952 by clear and unambiguous language, vested all powers over highways in the Commission. Colo. Sess. Laws 1952, ch. 57, pp. 144-151.

This court stated in *Johnson v. McDonald,* 97 Colo. 324, 49 P.2d 1017 (1935):

"It cannot be questioned that the state has the power to construct, improve, reconstruct and maintain public highways and bridges. It has determined to exercise that power in a certain manner. We know of no principle of law that authorizes courts to inquire into the motives of the legislature in exercising its powers. Courts are concerned only with the power of the legislature to act and not with the motive inducing its action; and this is equally true whether the motive is set forth in the law or left a mere matter of conjecture. . . ."

When the legislature transferred the various powers and duties of boards and commissions under the Administrative Organization Act of 1968, each and every power the Highway Commission had was transferred intact with it to the new department: State Department of Highways. There is no language we can find in the Administrative Organization Act, nor in

statutes pertaining to highways — nor has any been cited to us — which gives to the Governor the authority he seeks to exercise. Therefore, as will be seen, his directive was a nullity as the Commission by law exercises its prescribed statutory powers independently of the director Shumate to whom the Governor's order was sent.

I.

The powers and duties of the Commission were first delineated in 1952. How broad and all-encompassing they are we find expressed in eleven specific grants to section 43-1-105, C.R.S. 1973. The first of these is:

"(1) . . . (a) To formulate the general policy with respect to the management, construction, and maintenance of public highways in the state and, in that capacity, to receive delegations, including county commissioners interested therein;"

Others pertinent to the resolution of this controversy are:

"(b) To make such studies as it deems necessary to guide the chief engineer concerning the highway needs of the state;

"(c) To prescribe the administrative practices to be followed by the chief engineer in the performance of any duty imposed on him by law;

"(d) To advise and make recommendations to the governor and the general assembly relative to the highway policy of the state;

"(e) To require the chief engineer to furnish whatever reports, statistics, information, or assistance it may request in studying any particular highway problem or with respect to the operation of the division generally;

"(f) To furnish the chief engineer advice on any highway problem with which he may be confronted;

"(g) To promulgate and adopt all state highway and division budgets and state highway programs, including construction priorities and the approval of extensions or abandonments of the state highway system;

"(h) To act as consultants and to provide services and information, to the boards of county commissioners, which in the discretion of the commission are deemed beneficial to the state of Colorado;

"(i) To do all other things necessary and appropriate in the construction, improvement, and maintenance of the state highways;

"(j) To make all necessary and reasonable orders, rules, and regulations in order to carry out the provisions of this part 1 but not inconsistent therewith, but nothing in this section shall be deemed or construed to give the commission or any member thereof the power to direct any officer or any employee, other than the chief administrative officer of the division, to do or not to do anything;"

If any one or more of these powers and duties were intended to be delegated to the Governor or others, it would have been timely to do so when the executive department was reorganized. Yet, the reorganization action taken in relation to the highway department is found in this very brief enactment (Sections not pertinent are omitted.):

"24-1-126. *State department of highways — creation.* (1) There is hereby created a state department of highways, the head of which shall be the executive director of the state department of highways, which office is hereby created. The executive director shall be appointed by the governor, with the consent of the senate, and shall serve at the pleasure of the governor.

"(2) The state highway commission, created by part 1 of article 1 of title 43, C.R.S. 1973, and its powers, duties, and functions are transferred by a *type* 1 transfer to the state department of highways.

"(3) The state department of highways shall consist of the following divisions:

"(a) Division of highways, the head of which shall be the chief engineer. The department of highways and the office of chief engineer, created by part 1 of article 1 of title 43, C.R.S. 1973, and their powers, duties, and functions are transferred by a *type* 2 transfer to the state department of highways as the division of highways." (C.R.S. 1973).

In section 24-1-105(1), a *type* 1 transfer lifted intact the existing commission and provided "it shall exercise its prescribed statutory powers, duties, and functions . . . independently of the head of the principal department [in this case director Shumate of the department of highways]." Thus, it continues to be empowered to direct the chief engineer as set forth in subparagraphs (c) and (e) of section 43-1-105, C.R.S. 1973. In addition the chief engineer's responsibility to the commission is to be found in section 43-1-106, C.R.S. 1973, wherein it is stated:

"The chief engineer shall be the chief administrative officer of the division and shall have direct control and management of its functions, subject only to the powers and duties of the commission as prescribed in this part 1. . . ."

### II.

Argument has been advanced that section 43-1-111(4), C.R.S. 1973, establishes the authority of the Governor. The section reads:

"The budget in its prepared form shall be submitted to the governor for approval and to the controller on or before June 1 of each year."

■ We do not address ourselves to what extent this section may or may not give the Governor a voice in the policy making powers of the Commission. We leave the interpretation of this section to another day. No budget has been submitted to the Governor, so operation of this section has not been triggered. The Governor in a memorandum to the Commission has stated that sometime in the future — what year no one knows — he intends to refuse to approve any budget which includes funds for highway I-470. What the Governor intends to do in the future is not appropriate for judicial review. *Cf. O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); *Toilet Goods Assn. v. Gardner*, 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967).

Rule made absolute.

MR. CHIEF JUSTICE PRINGLE specially concurs.
MR. JUSTICE HODGES does not participate.
MR. JUSTICE LEE withdraws participation.

MR. CHIEF JUSTICE PRINGLE specially concurring:

I specially concur. My concern reflects my deep conviction that fundamental to our state constitution is the doctrine of the separation of powers, a corollary of which, in my opinion, is the operation of checks and balances. Since the court today leaves open the question of the Governor's check by the right to budget approval, I add my vote to the announced opinion of the court.

## ADDENDUM

The petition for rehearing by the attorney general presents new and expanded arguments which he admitted were not advanced in his original brief. Thus we issue this addendum to discuss them.

It is noted that in 1970 the people passed a constitutional amendment (*Colo. Const.*, Art. IV, Sec. 22) which specified that the executive directors of principal departments would be exempt from civil service. In 1971, pursuant to that amendment, the legislature further amended the Administrative Organization Act of 1968 and provided that "The chief engineer shall be employed by the executive director of the state department of highways pursuant to the constitution and laws of the state." Colo. Sess. Laws 1971, ch. 29, 120-2-4 at 107. It further provided that the executive director of the state department of highways was to be appointed by the Governor and to serve at his pleasure. *Id.*, 3-28-26 at 105. That same legislation *reenacted* the *type* 2 transfer of the chief engineer to the department of highways.

The *type* 2 transfer provides:

"When any department, institution, or other agency, or part thereof, is transferred by a *type* 2 or *type* 3 transfer to a principal department under the provisions of this article, its prescribed powers, duties, and functions, including rule-making, regulation, licensing, promulgation of rules, rates, regulations, and standards, and the rendering of findings, orders, and adjudications are transferred to the head of the principal department into which the department, institution, or other agency, or part thereof, has been transferred." Section 24-1-105(4), C.R.S. 1973.

The attorney general argues that the chief engineer cannot be subject to the directives of the commission because the chief engineer is appointed by the director and contends the director now has all the powers of the chief engineer.

The attorney general contends that under this statute the powers, duties, and functions of the chief engineer were transferred to the princi-

pal head of the department, that is, the executive director of the department of highways.

The attorney general recognizes that this legislative action and the interpretation he urges would create a patent conflict with those powers clearly vested in the highway commission to direct the chief engineer. The attorney general would resolve this conflict by the application of section 24-1-104, C.R.S. 1973, which provides:

". . . Where a conflict arises as to the administration of the policies of the executive branch of the state government, such conflict shall be resolved by the governor, and the decision of the governor shall be final."

However, the ostensible conflict between the respective powers vested in the highway commission and the executive director of the department of highways is one of law, not of policy. Thus the resolution of this conflict is for the judiciary, by application of recognized principles of statutory construction.

Our primary objective in interpreting these seemingly conflicting statutes is to give effect to the intent of the legislature. *Frohlick Crane Service, Inc. v. Mack*, 182 Colo. 34, 510 P.2d 891 (1973); *Johnston v. City Council*, 177 Colo. 223, 493 P.2d 651 (1972). In our search for legislative intent, the statutes must be read and considered as a whole, and the meaning of any one section must be gathered from a consideration of the entire legislative scheme. *In Re Interrogatories by the Governor*, 163 Colo. 113, 429 P.2d 304 (1967); *Wheeler v. Rudolph*, 162 Colo. 410, 426 P.2d 762 (1967).

We are not here confronted with just a 26-mile segment of a previously designated connecting link in the interstate highway system. What we decide affects the entire legislative plan for a complete highway system. Running through Title 43, C.R.S. 1973, is a common thread — a coordinated series of five articles which will insure for the people of this state an entire network of state, federal and county highways so linked as to provide efficient connections to every section of the state. To accomplish this was created and continued in existence a policy-making commission composed of representatives from eight districts into which the state was divided. In addition there is an at-large member. They serve staggered terms so as to insure that this body politic will have continuity. This is reasonable because of continuity and experience from the initial plans to completion of a highway.

An analysis of other statutes, particularly sections 43-1-104, 43-1-105, and 43-1-106, C.R.S. 1973, indicates that the legislature intended that the chief engineer be responsible to the commission in well-defined areas, because they set for that position highly professional engineering qualifications while providing for no expertise in engineering as a prerequisite to appointment as the director.

We hold that the commission continues to be empowered to direct the chief engineer in the areas which will enable it to "exercise its prescribed statutory powers, duties and functions . . . independently of the

head of the principal department [in this case, the executive director of the department of highways]." Section 24-1-105(1), C.R.S. 1973.

MR. JUSTICE LEE withdraws his participation in the original opinion, and he and MR. JUSTICE HODGES do not participate in consideration of the petition for rehearing nor in this addendum.