Marsha B. **YEAGER** and Thomas J.B. Reed, in their capacity as Judges of the Boulder County Court, Plaintiffs–Appellants,

v.

Joseph R. **QUINN,** Chief Justice of the Colorado Supreme Court, Defendant–Appellee.

No. 88CA0059.

Colorado Court of Appeals, Div. C.

Aug. 25, 1988.

Rehearing Denied Sept. 22, 1988.

Certiorari Denied Jan. 9, 1989.

Richard D. Irvin, E. Gregory Martin, Boulder, for plaintiffs-appellants.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Neil L. Tillquist, Asst. Atty. Gen., Denver, for defendant-appellee.

STERNBERG, Judge.

The plaintiffs, in their capacity as Boulder County Court judges, sought a declaratory judgment as to the validity of a directive by the Chief Justice of the Colorado Supreme Court providing for the replacement of county court reporters by electronic audio recording devices. The plaintiffs contend that the trial court erred in entering summary judgment denying preliminary injunctive relief and in dismissing their complaint for what amounts to failure to state a claim. Because we conclude that the directive in question is a valid exercise of executive authority by the Chief Justice, we affirm.

The facts are undisputed. The General Assembly's appropriation to the Judicial Department for fiscal year 1987–88 was based in part on a recommendation by the Joint Budget Committee to eliminate all county court reporter positions and to install electronic recording equipment in the county courts. In response to the limited appropriation, the Chief Justice appointed a committee of judges and court personnel to make budgetary recommendations. Based on the committee's report, the Chief Justice issued Directive 87–2 (CJD 87–2) which stated, in part:

"On or before October 15, 1987, the 22 county court reporters in county courts shall be replaced by assistant division clerks, and electronic recording devices shall be installed in these 22 county courts."

Prior to October 15, 1987, all but 22 of the 111 Colorado county court divisions used electronic recording devices only. The committee estimated that the elimination of court reporter positions in the remaining courts would result in a net savings to the Judicial Department of approximately $102,000 for the first year and $220,000 in each succeeding year.

The plaintiffs contend that they are empowered by § 13–6–309, C.R.S. (1987 Repl. Vol. 6A) to use court reporters instead of electronic recording devices and that, in issuing CJD 87–2, the Chief Justice exceeded his authority as executive head of the Judicial Department by contravening the statute. We disagree.

Section 13–6–309, C.R.S. (1987 Repl.Vol. 6A) states:

"A verbatim record of the proceedings and evidence at trials in the county court *shall be maintained by electronic devices or by stenographic means, as the judge of the court may direct,* except when such record may be unnecessary in certain proceedings pursuant to specific provisions of law." (emphasis added)

On its face, this statutory language appears to support plaintiffs' position. Indeed, the current version of C.R.C.P. 380, incorporates the exact language of the predecessor to this statute, 1965 Perm. Supp., C.R.S. 1963, 37–15–9, and states that the county court "may designate one or more official court reporters."

Interpretation of a statute, however, cannot properly be performed in a vacuum.

When the statute in question is part of a comprehensive legislative program, the court must consider the relationship of that statute to other legislative provisions concerning the same subject matter. *Colorado General Assembly v. Lamm*, 700 P.2d 508 (Colo.1985). The statute must be read and construed in context, and the meaning of any one section must be gathered from a consideration of the entire legislative scheme. *Travelers Indemnity Co. v. Barnes*, 191 Colo. 278, 552 P.2d 300 (1976); *State Highway Commission v. Haase*, 189 Colo. 69, 537 P.2d 300 (1975). Only then can a "consistent, harmonious, and sensible effect" be given to all its parts. *J.A. Tobin Construction Co. v. Weed*, 158 Colo. 430, 407 P.2d 350 (1965).

The legislative scheme in this instance is § 13–6–301 through § 13–6–311, C.R.S. (1987 Repl.Vol. 6A) which encompasses the "General Procedural Provisions" for county courts. Placement of § 13–6–309 in this context suggests it is wholly procedural in nature, and in this realm, the Supreme Court is the ultimate rule-making authority. Colo. Const. art. VI, § 21.

So long as the purpose of a rule's promulgation is to permit a court to function efficiently, the Supreme Court's rule-making power is inherent, unless its impact is such as to conflict "with other validly enacted legislative or constitutional policy involving matters other than the orderly dispatch of business." *People v. McKenna*, 196 Colo. 367, 585 P.2d 275 (1978). We conclude that CJD 87–2 does not conflict with any legislative or constitutional policy and is entirely concerned with the orderly dispatch of county court business.

Section 13–6–214(2), C.R.S. (1987 Repl. Vol. 6A) provides that in Class B counties, such as Boulder, "there shall be appointed such deputy clerks, assistants, reporters, stenographers, and bailiffs as are necessary, in accordance with the provisions of § 13–3–105." The latter section, pursuant to Colo. Const. art. VI, § 5(3), delineates the authority of the Supreme Court to prescribe, by rule, a personnel classification plan for all courts of record funded by the state, including the number of full-time and part-time positions in each court. Section 13–3–105(2)(e), C.R.S. (1987 Repl.Vol. 6A).

In keeping with § 13–3–105, C.R.S. (1987 Repl.Vol. 6A), the Supreme Court promulgated the Colorado Judicial System Personnel Rules (C.J.S.P.R.). These rules provide that the staffing patterns and position allocations for each court shall be determined by the State Court Administrator with the approval of the Chief Justice. C.J.S.P.R. 16. Although C.J.S.P.R. 18(e)(5) provides that the confidential employees of a county judge shall include a court reporter, a county court judge's authority to appoint any employee is subject to approval by the chief judge of the court, C.J.S.P.R. 4(a)(4), who in turn is responsible to the Chief Justice and the Supreme Court. C.J.S.P.R. 3(a)(1).

The Chief Justice is the executive head of the judicial system. Colo. Const. art. VI, § 5(2). The Chief Justice's superintendence of the judiciary is effected by means of the Chief Justice Directives, which are policy statements promulgated pursuant to the Supreme Court's general power to administer the Colorado judicial system. *Bye v. District Court*, 701 P.2d 56 (Colo.1985); *see Pena v. District Court*, 681 P.2d 953 (Colo.1984); Colo. Const. art. VI, § 3 ("The supreme court shall appoint a court administrator and such other personnel as the court may deem necessary....").

In this regard, we take note of the supervisory role performed by the Chief Justice in the preparation and approval of the Judicial Department's operating budget and capital construction budget. *See* §§ 13–3–106(1)(a) and 13–3–108(2), C.R.S. (1987 Repl.Vol. 6A). Even if, as plaintiffs argue, § 13–6–309 could be construed as an attempt by the General Assembly to place hiring and budgetary decisions within the sole discretion of the county court judge, the statute would violate the separation of powers doctrine. *See* Colo. Const. art. III. The General Assembly is not permitted to interfere with the Judicial Department's power to administer appropriated funds, which includes the making of specific staffing and resource allocation decisions. *See*

*Anderson v. Lamm*, 195 Colo. 437, 579 P.2d 620 (1978).

It is unnecessary, however, to read the statute so broadly. A statute is presumed to be constitutional, and if susceptible to more than one interpretation, it must be interpreted so as to render it constitutional. *Zaba v. Motor Vehicle Division*, 183 Colo. 335, 516 P.2d 634 (1973).

Accordingly, we conclude that, within the context of Title 13, C.R.S., and given the constitutionally-mandated supervisory authority of the Supreme Court and the Chief Justice, § 13–6–309 gives county court judges discretion to direct the use of court reporters instead of electronic recording devices only if funds have been made available for this purpose in the Judicial Department's consolidated operating budget and if court reporter positions have been allocated to the county courts in the staffing pattern approved by the Chief Justice under C.J.S.P.R. 16. Neither of these situations exists at present.

JUDGMENT AFFIRMED.

NEY and REED, JJ., concur.