Rose MARTIN, Roberta Keck, Judith Gonzales, Ben Tolin, Paul McDonald, Robert Townsend, John Dahm, Maureen Dewey, Cheryl Carmichael, Lycinda Conger, Donna Koontz, Carol Erner, Sally Wilson, Barbara McGuire, Kathleen Cellar, Margaret Miller, Kenneth Hosmer, Frank Mascarenas, Ronald Maas, Daniel Fulks, Bruce Baylor, Jeanne Barlow, Deborah Keel, Paul Crawford, Robert Erner, Bill Cooper, Linda Allar, Kenneth Carmichael, Georgia Patcheck, Carole McWilliams, Anne Smith, Sharon Wilson, Nila Jo Schwindt, Marilyn Kirkwood, Janice Harding, Norma Anderson, Roberta Keeler, Kim "Slim" McWilliams, Shirley Russell, Plaintiffs–Appellants,

v.

MONTEZUMA–CORTEZ SCHOOL DISTRICT RE–1, Bruce McAfee, Harold Gresh, Janice Hutchinson, Robert Green, Steve Chappel, Robert Cruzan, and F.K. Howerton, Defendants–Appellees.

MONTEZUMA–CORTEZ SCHOOL DISTRICT RE–1, Plaintiff–Appellant,

v.

MONTEZUMA–CORTEZ EDUCATION ASSOCIATION, San Juan Basin Uniserv, a Colorado corporation, Colorado Education Association, a Colorado corporation, Rose M. Martin, Roberta J. Keck, Judith Gonzales, Roberta Keeler, Kim "Slim" McWilliams, John Dahm, James V. Lang, and James E. Mills, Defendants–Appellees.

Nos. 85CA1553, 85CA1583.

Colorado Court of Appeals, Div. I.

June 28, 1990.

As Modified on Denial of Rehearing Aug. 9, 1990.

Certiorari Granted for No. 85CA1553 April 22, 1991.

William P. Bethke, Hornbein, Mac-Donald, Fattor & Hobbs, Larry F. Hobbs, Denver, for plaintiffs-appellants.

Fred C. Kuhlwilm, Miller & DeLay, P.C., Reese Miller, Kenneth A. DeLay, Denver, for defendants-appellees.

Lauren B. Kingsbery, Denver, for amicus curiae Colorado Ass'n of School Boards.

Opinion by Judge REED.

The Montezuma–Cortez School District RE–1 (District) appeals the summary judgment entered which dismissed the District's claim for damages against plaintiffs, all of whom are teachers employed by the District, for tortious interference with contract. The teachers appeal the judgment entered upon jury verdicts denying their claims for alleged wrongful termination of their contracts. We affirm.

These cases arise out of a public teachers' strike in Montezuma County, Colorado. On January 6, 1981, the teachers gave notice to the Director of the Division of Labor of a labor dispute. On January 30, 1981, he declined jurisdiction *nunc pro tunc* as of January 23, 1981.

On January 26, 1981, about one-half of the teachers in the District went on strike. Included within this group are the 42 teachers who became plaintiffs here.

Thereafter, notice was given to the teachers by the Board that hearings would be held to ascertain the status of their employment contracts. These notices stated that the hearings were not "dismissal proceedings under the Tenure Act." The teachers, through their counsel, objected and insisted upon full compliance with the proceedings set forth within the Teacher Employment, Dismissal and Tenure Act contained in § 22–63–101, et seq., C.R.S. (1988 Repl.Vol. 9) (Tenure Act).

Hearings were conducted by the Board commencing April 14, 1981. No teachers attended. The Board selected a referee to conduct the hearings and made direct factual findings without the intervention of a neutral hearing officer. It determined that the 42 teachers here involved had abandoned their contracts by striking and refusing to perform their duties and that, as a result they had forfeited any tenure status and had breached their contracts of employment.

Thereafter, the District sued several associations and certain individually named teachers. It sought injunctive relief to prevent the teachers from striking and monetary damages for the teachers' breach of contract and for tortious interference with the contracts between the District and teachers. The teachers, in a separate lawsuit, sued the District and the individual members of the School Board (Board) seeking damages for termination of their employment and withholding their pay. These cases were consolidated for trial.

The trial court ruled, during pre-trial motions, that the strike was lawful under §§ 8–2–101 and 8–1–126, C.R.S. (1986 Repl. Vol. 3B). Accordingly, it granted the teachers' motion for summary judgment of dismissal of the District's claim for damages. Based upon jury verdicts, it entered judgment denying teachers' claim for damages for alleged wrongful termination of their contracts. It is from these rulings that the respective appeals are taken.

## I.

The District contends that the trial court erred by dismissing, on summary judgment, its claim for damages for wrongful interference with contracts. We disagree.

### A.

■ No incident or actions of the teachers were relied upon by the District as constituting wrongful interference with contract other than its claim that the strike

was illegal, per se. The District contends, as it did in the trial court, that peaceable strikes by public employees in Colorado are illegal as a matter of law.

■ Under the common law, strikes by public employees are illegal. *Anchorage Education Ass'n v. Anchorage School District*, 648 P.2d 993 (Alaska 1982); *see also Annot.*, 37 A.L.R.3d 1147 (1971). This principle has as its purposes to prevent public employees from denying the government's authority, to distinguish between public employees vis-a-vis private employees, and to help illustrate the absence of profit making in the public sector.

In support of the trial court's reasoning, the teachers contend that we should follow the rule recently adopted in *County Sanitation District No. 2 v. Los Angeles County Employees Ass'n Local 660*, 38 Cal.3d 564, 214 Cal.Rptr. 424, 699 P.2d 835 (1985), *cert. denied*, 474 U.S. 995, 106 S.Ct. 408, 88 L.Ed.2d 359 (1985). In that case, the California Supreme Court held that a strike by public employees is not unlawful unless it threatens public health or safety. We are not persuaded, however, by the California court's reasoning that the policy considerations prohibiting public employee strikes are no longer applicable.

Some of the reasons cited by the California Court are not applicable in Colorado. For example, the usual policy considerations are not necessary in California because of its statutory enactment which sets forth an extensive procedural guideline for dealing with public employee unions. Colorado, in contrast, does not have a similar statutory scheme for dealing with public employees, and we decline to modify the common law by judicial decision.

■ The District next argues that the trial court erred when it held the strike legal based on §§ 8–2–101 and 8–1–126. We agree.

Section 8–2–101 provides in pertinent part that:

"It is not unlawful for any two or more persons to unite, combine, or agree in any manner, to advise or encourage, by peaceable means, any persons to enter into any combination in relation to entering into or remaining in the employment of any person or corporation, or in relation to the amount of wages or compensation to be paid for labor, or for the purpose of regulating the hours of labor, or for the procuring of fair and just treatment from employers, or for the purpose of aiding and protecting their welfare and interests in any other manner not in violation of the constitution of this state or the laws made in pursuance thereof...."

In construing the statute, we must first seek to determine the intent of the General Assembly. *State Highway Commission v. Haase*, 189 Colo. 69, 537 P.2d 300 (1975).

On its face, § 8–2–101 does not expressly grant public employees the right to strike. And, such a right to strike cannot be said to be implicit therein because, when the statute was first adopted in 1889, the established common law prohibited strikes by public employees. *See* § 2–4–203(1)(d), C.R.S. (1980 Repl.Vol. 1B).

We, therefore, agree with the District that § 8–2–101 was intended only to eliminate the threat of criminal conspiracy charges against those engaged in union activities and that the statute was not intended to legalize strikes by public employees. *See Passaic Township Board of Education v. Passaic Township Education Ass'n*, 222 N.J.Sup. 298, 536 A.2d 1276 (1987).

We also agree with the District that, contrary to the trial court's ruling, § 8–1–126 afforded no basis to validate the strike. Even if we assume that this statute applies to public employees, it is undisputed that the notice provisions of § 8–1–125, C.R.S. (1986 Repl.Vol. 3B) were not complied with by the teachers.

Thus, we conclude that the trial court erred in determining that the strike was legal.

### B.

■ Since the strike was illegal, the District argues that the trial court erred in

dismissing the District's tort claims by summary judgment. We disagree.

Other jurisdictions have ruled that no tort liability for damages exists for public employee strikes. *Lamphere Schools v. Lamphere Federation of Teachers*, 400 Mich. 104, 252 N.W.2d 818 (1977); *Fulenwider v. Firefighters Ass'n*, 649 S.W.2d 268 (Tenn.1982); *City of Fairmont v. Retail, Wholesale & Department Store Union*, 166 W.Va. 1, 283 S.E.2d 589 (1980). The rationale for refusing to recognize tort liability is the realization that imposing tort liability may be counterproductive to resolving labor disputes.

The District's reliance on *State v. Kansas City Firefighters Local*, 672 S.W.2d 99 (Mo.App.1984) to impose liability is not compelling. It dealt with a strike that was unlawful by statute and in which the firefighters had been restrained from striking by a court order. The factors relied on in that situation to impose liability are lacking in the present case.

We are persuaded by the decisions in those jurisdictions that have prohibited tort liability. *See, e.g., Lamphere Schools v. Lamphere Federation of Teachers, supra.* Therefore, we hold that no tort liability exists in favor of the District for public employee strikes under the circumstances presented here. Consequently, the trial court properly dismissed the District's tort claims upon summary judgment.

## II.

The teachers sought damages for termination of their employment as being in violation of the Teacher Employment, Dismissal, and Tenure Act (Tenure Act) § 22–63–101 and, alternatively, as a violation of due process under 42 U.S.C.A. § 1983 (1982). The teachers contend that the trial court erred in refusing to grant their motion for directed verdict and in the instructions given to the jury relative to their claims. We agree in part, but find that any error was harmless.

### A.

As to the District's initial contention that the trial court was without jurisdiction to hear the claims, we conclude that the trial court properly denied the District's motion to dismiss the teachers' 42 U.S.C.A. § 1983 claim, *Talbot v. School District No. 1*, 700 P.2d 919 (Colo.App.1984), and their claim for damages for a violation of the Tenure Act. *See Julesburg School District No. RE–1 v. Ebke*, 193 Colo. 40, 562 P.2d 419 (1977).

### B.

We disagree with the teachers' contention that they were entitled to a directed verdict on their claim of denial of due process under 42 U.S.C.A. § 1983 (1982).

■ The procedural safeguards to protect property rights in employment are determined by the Constitution. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). This is true even though the statute creating the property right contains procedural safeguards. Here, the teachers' due process claim is based on 42 U.S.C.A. § 1983. Thus, the Board was required to ensure that the procedures it established for reviewing teachers' employment status were constitutionally sound.

■ The teachers were given notice of the charges and the hearing and were advised of their rights including an opportunity to be represented by counsel, to present and cross-examine witnesses, and to present a defense. The use of the Board rather than a hearing officer as a fact finder did not substantially impair the teachers' due process rights. This is because the Board always has the prerogative to decide on the ultimate facts concerning whether to dismiss a teacher. *Blair v. Lovett*, 196 Colo. 118, 582 P.2d 668 (1978). Thus, the District did set up constitutionally sound procedures to protect the teachers' due process rights.

■ We are further unpersuaded that they were deprived of due process because the Board was a biased decision maker. A legal presumption of integrity, honesty, and impartiality exists in favor of those serving in a quasi-judicial capacity. And in order to overcome this presumption, the challenger of the quasi-judicial decision must demonstrate a conflict of interest or impermissible bias upon the part of the

decision maker. *Leonard v. Board of Directors*, 673 P.2d 1019 (Colo.App.1983).

A decision maker may be biased if he has a personal or financial stake in the decision that may create a conflict of interest, or if the decision maker has personal animosity toward the claimant. *Hortonville Joint School District No. 1 v. Hortonville Education Ass'n*, 426 U.S. 482, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976).

Here, no evidence was presented to establish that board members had a personal or financial stake in the dispute which would influence their judgment. Similarly, there is insufficient evidence that the Board had personal animosity against the teachers. To the contrary, nearly one-half of the teachers returned to work without penalty.

Additionally, the trial court's statement that the Board hearings could not, as a matter of law, provide due process was without evidentiary basis and is not binding on this court. The statement was made in response to arguments relative to the District's motion for a directed verdict at the close of the teachers' case. This adverse finding against the District could not have been made, if at all, until the District presented its case. C.R.C.P. 50. Thus, there was no evidence to overcome the presumption in favor of the Board.

### C.

We agree that the teachers were entitled to a directed verdict that there had been a violation of the Tenure Act in their termination. However, we conclude that this error was harmless.

The effect of Instruction No. 22, combined with the special interrogatory to the jury, was to affix liability upon the District, as a matter of law, unless it established that the teachers had abandoned their contracts. Thus, the purpose of the directed verdict on this issue was fulfilled, albeit in different form.

### D.

The final argument raised by the teachers is that Instruction No. 22 and Interrogatory No. 2 were erroneous and prejudicial. We disagree.

Teachers argue that the challenged instruction was erroneous because it purported to create a binding contract even for those teachers who did not sign their contracts and for those teachers who allegedly signed under duress. In addition, they contend that the instruction is inconsistent with the challenged interrogatory because it refers to abandonment, breach, or refusal to perform while the interrogatory refers only to abandonment. Because these terms are not synonymous, it is argued that a teacher could have breached or refused to perform as stated in the instruction, but not abandoned as is stated in the interrogatory. Finally, teachers argue the instruction did not accurately instruct on the specific intent to abandon as an element of abandonment. While we agree that the instructions lack precision, we conclude that any error therein is insufficient to justify a reversal.

We are persuaded by and adopt the rule in *Farrelly v. Timberlane Regional School District*, 114 N.H. 560, 324 A.2d 723 (1974). If, as here, teachers strike with no expressed willingness to return to their positions, this action warrants a conclusion that the contract was abandoned. We consider the rule in *Farrelly* to be consistent with the established rule in this jurisdiction that abandonment can be established by a person's positive and unequivocal acts that are inconsistent with the party's intent to be further bound, when coupled with the other party's acquiescense in those acts. *H.T.C. Corp. v. Olds*, 486 P.2d 463 (Colo. App.1971) (not selected for official publication).

We conclude that the instructions, when considered in their totality, adequately advised the jury that abandonment constituted a defense to the teachers' claim and that further elucidation on the definition of terms was not required.

The judgment is affirmed.

PIERCE and STERNBERG, JJ., concur.