QUESTION PRESENTED AND CONCLUSION
 Question: Whether authority over the budget and personnel of the Division of Gaming lies with the Department of Revenue, the Limited Gaming Control Commission, or some combination of the two entities.
Answer: While the Commission must approve the Division's budget, both the budget and the Division's personnel decisions are under the control of the Department and ultimately are made by the executive director.
BACKGROUND
In 1991, Colorado voters approved an initiative to allow limited gaming in Central City, Black Hawk and Cripple Creek. The constitutional amendment included a number of restrictions on the conduct of limited gaming evidencing an intent to tightly control the newly-approved practice of legalized casino gambling. In addition to narrowly defining those geographic areas permitted to host limited gaming, the voters prescribed the hours, space, and income of limited *Page 2 
gaming, and provided for the distribution of gambling revenues received by the state in an authorized limited gaming fund. COLO. CONST. art. XVIII, § 9.
Of particular significance for purposes of this opinion, the amendment directed the general assembly to establish the Colorado Limited Gaming Control Commission ("Commission") to administer and regulate limited gaming. COLO. CONST. art. XVIII, § 9(2). The Commission is granted specific authority to promulgate rules and regulations governing the licensure, conduct and operation of limited gaming. Id.; C.R.S. §12-47.1-302(a). The Commission is created within the Division of Gaming, under the Department of Revenue. C.R.S. § 12-47.1-302. Its members are appointed by the Governor; any member of the Commission can be removed by the Governor at any time. C.R.S. § 12-47.1-301(1) (1)(d).
The Division of Gaming ("Division") also is created within the Department of Revenue ("Department"). C.R.S. § 12-47.1-201. The function of the Division is to "license, implement, regulate, and supervise the conduct of limited gaming" in Colorado. C.R.S. § 12-47.1-202. The Division director is to "supervise and administer the operation of the Division of Gaming and Limited Gaming" in accordance with statutory provisions and the rules of the Commission, and to employ and direct such personnel as may be necessary to carry out the purposes of the Limited Gaming Act. C.R.S. §§ 12-47.1-201(2)(a) 203(2)(c)(I). The Division director is appointed by, and may be removed by, the executive director of the Department of Revenue. C.R.S. § 12-47.1-201.
In the Colorado Gaming Act of 1991 ("Act") at C.R.S. section 12-47.1-101et seq., the legislature provided that the Commission, the Division, and the Division director are created under the Department by a "type 2" transfer. "The Division of Gaming, the Colorado limited gaming control commission created in section 12-47.1-301, and the director of the division of gaming shall exercise their respective powers and perform their respective duties and functions as specified in this article under the department of revenue as if the same were transferred to the department by a type 2 transfer. . ." C.R.S. § 12-47.1-201. The fact that the Commission, Division, and Division director all were created by a type 2 transfer is significant.
The Administrative Organization Act of 1968 establishes three types of transfers with a type 1 transfer creating the most autonomous and powerful agencies or institutions. In a type 1 transfer, an entity exercises its prescribed statutory powers, duties, and functions . . . independently of the head of the principal department. State HighwayCommission of Colorado v. Haase, 537 P.2d 300, 303 (Colo. 1975). A type 3 transfer means the abolishing of an existing department, institution, or other agency and the transferring of all or part of its powers and duties to a principal department. C.R.S. § 24-1-105(3). When any department, institution, or other agency is transferred by a type 2 transfer, "its statutory authority, powers, duties, and functions, records, personnel, property, and unexpended balances of appropriations, allocations, or other funds, including the functions of budgeting, purchasing, and planning, are transferred to the principal department." C.R.S. § 24-1-105(2). In addition, the transferred entity's "prescribed powers, duties, and functions, including rule-making, regulation, licensing, promulgation of rules, rates, regulations, and standards, and the rendering of findings, orders and adjudications are transferred to the head of the principal department into which the department, institution, or other agency" has been transferred. C.R.S. § 24-1-105(4). In the instance of the Commission, *Page 3 
the legislature carved out exceptions to the usual type 2 transfer of authority. Perhaps most notably, the General Assembly reserved to the Commission specific authority to promulgate rules and regulations governing the licensure, conduct and operation of limited gaming. C.R.S. § 12-47.1-302(a). In addition, C.R.S. § 12-47.1-302 lists other express statutory powers and duties of the Commission including, inter alia, the authority to issue subpoenas; to issue, suspend or revoke licenses or levy fines; to recommend changes in the Gaming Act to prevent abuses and violations of the Gaming Act; to report concerns to elected officials; to seek injunctive or declaratory relief in order to enforce gaming statutes and rules; and generally "to exercise such incidental powers as may be necessary to ensure the safe and orderly regulation of limited gaming and the secure collection of all revenues, taxes and license fees." The Commission, then, is a type 2 institution with certain, express type 1 duties and powers defined by statute. The Department therefore maintains a degree of direct control over the Commission typical of a type 2 transfer, a matter that is discussed in more detail below.
At the same time, the role of the Division director is to "supervise and administer the operation of the Division of Gaming and Limited Gaming" in accordance with statutory provisions and the rules of the Commission, and to employ and direct such personnel as may be necessary to carry out the purposes of the Limited Gaming Act. C.R.S. §§12-47.1-203(2)(a) (2)(c)(I). The work of the Division and its director compliments and facilitates the Commission's work. For example, the Division director confers with the Commission at least once a month with regard to the operation of the division; furnishes the Commission a monthly report which contains a full and complete statement of the Division's revenue and expenses; advises the Commission and makes recommendations regarding rules or other procedures that the director thinks necessary and advisable to improve the operation of the Division and the conduct of limited gaming; and, with Commission approval, prepares a budget for each fiscal year and enters into agreements with other state entities to secure services. C.R.S. § 12-47.1-203. Finally, the Division director is to work with the Commission to "take such action as may be determined by the Commission to be necessary or desirable in order to carry out the purposes and provisions" of the Act. C.R.S. §12-47.1-203(2)(k).
The Governor requested this formal opinion after a majority of Commission members asserted that the Commission had plenary authority over the Division's budget and personnel. The executive director of the Department, under whose auspices both the Commission and Division are created, maintained that the Department had statutory management and oversight of both functions. The following discussion addresses the roles of the Commission, Department and Division regarding the functions of budgeting and managing Division personnel.
DISCUSSION
In determining the respective roles of the Commission and Department with regard to the Division's budget and personnel, general guidance can be found in the Administrative Organization Act of 1968. This legislation is the vehicle by which the General Assembly outlines an arrangement of state government to strengthen the powers of the governor and provide a reasonable span of administrative and budgetary controls within an orderly organizational structure of state government. C.R.S. § 24-1-101. *Page 4 
All executive and administrative offices, agencies, and instrumentalities of the executive department of the state government and their respective functions, powers, and duties are allocated among and within the principal departments. C.R.S. § 24-1-110. The head of a principal department is appointed by the governor. C.R.S. § 24-1-108. The State Personnel System provides that the head of each principal department shall be the appointing authority for the employees of his office and for heads of divisions, within the personnel system, ranking next below the head of each department. Heads of such divisions shall be the appointing authorities for all positions in the personnel system within their respective divisions. COLO. CONST. art. XII, § 13(6). In addition, under a type 2 transfer, the Department's executive director is the party ultimately responsible for the exercise of the Division's and the director's statutory powers. See O'Gorman v. Industrial Claim AppealsOffice, 839 P.2d 1149, 1152 (Colo. 1992).
The Department of Revenue is one of the nineteen principal departments in the executive department of state government. C.R.S. § 24-1-117. There are five divisions within the Department. One of these is the Division of Gaming, which includes the Colorado Limited Gaming Commission. C.R.S. §24-1-117(4)(a)(VII). The director of the Division is appointed by, and is subject to removal by, the executive director of the Department. C.R.S. § 12-47.1-201.
When it comes to hiring Division personnel, state statute provides that the Division director is to supervise and administer the operation of the Division of Gaming and "employ and direct such personnel as may be necessary" to carry out the purposes of the Act. C.R.S. §§ 12-47.1-201(2)(a) 203(2)(c)(I). The Division director appoints all Division staff and either supervises them directly or delegates supervisory authority to managers.
Pursuant to the State Personnel System, the Commission, on the other hand, has no legal role in selecting or retaining the director or any employees of the Division. The Commission is not the appointing authority for these positions. See COLO. CONST. art. XII, § 13(8). The Commissionmay be granted an advisory role to the Division director and the Department executive director by virtue of the close workings of the Division and Commission. However, the executive director has ultimate authority in all departmental personnel matters.
Turning to the matter of what entity controls the Division's budget, it is important to understand the funding mechanism created for limited gaming. In the constitutional initiative establishing limited gaming in Colorado, voters approved the institution of a limited gaming fund in the State Treasury. All casino licensing fees and up to forty percent of the gross proceeds generated from limited gambling are paid into the Limited Gaming Fund ("Fund"). COLO. CONST. art. XVIII, § 9(5)(a). It is up to the Commission to establish the percentage paid into the Fund by each licensee to the Commission, in addition to license fees and taxes. C.R.S. § 12-47.1-302(2)(h). All ongoing expenses of the Division, the Commission, and any other state agency that are related to administration of limited gaming, must be paid from the moneys in the Fund. Payment is made upon proper presentation of a voucher prepared by the Commission. As a result of this funding arrangement, no appropriation by the General Assembly is needed to support limited gaming and its regulation. At the end of each state fiscal year, the State Treasurer distributes the balance remaining in the Fund (less two months of ongoing administrative expenses) according to set guidelines found in the constitutional provision. See COLO. CONST. art. XVIII, § 9(5)(b). *Page 5 
Among its statutory duties, the Division annually must prepare and submit to the Commission for its approval a proposed budget for the succeeding fiscal year. The budget must set forth a complete financial plan for all proposed expenditures and anticipated revenues for the Division. C.R.S. §12-47.1-203(j). Review of a division budget by a type 2 commission is an apparent anomaly in state government. The Department's current executive director and budget director describe the Division's budgeting process as standard with the exception of the requirement to seek the Commission's approval.[1] It is helpful to recount the steps in the budget process in order to better understand the Commission's role.
The Division staff begins the budget process by preparing requests for any new decision items above the Division's base continuation budget. The decision items are presented to the Commission for approval prior to inclusion in the Department's budget. The budget, with any decision items, then is drafted by Department budget staff with Division input. The executive director approves the entire Department budget and forwards it to the Governor's Office of State Planning and Budgeting for review. Eventually, the final Department budget is transmitted to the legislative Joint Budget Committee.
At this juncture the Division of Gaming budget process differs from other divisions in the department because of the direct funding of gaming by the industry itself. While the state budget includes a line reflecting the Division's annual continuation budget, in this instance it is for informational purposes only because there is no legislative appropriation for gaming. The money in the Division's budget line automatically is reserved to the Limited Gaming Fund to pay all ongoing expenses of the Commission, Division, Department, or any other state agency associated with limited gaming. C.R.S. § 12-47.1-701(b).
After the Division budget has made its way through the Joint Budget Committee, it is returned to the Commission for final presentation. Historically, there has not been any disagreement with the budget and the Commission's approval has been routine. It is possible, though, that the Commission could reject the budget and insist that changes be made. Ideally, the Commission and Division and Department staff would negotiate successfully any revisions and agree on an amended budget. Any requested change to the budget at this stage would take the form of a supplemental budget request or budget amendment and would require that the Department go back through the budget approval process at both the executive and legislative levels. The final authority over the executive budget is vested in the governor. C.R.S. § 24-37-303. However, the Commission could withhold its approval thereby giving it de facto control over the Division's portion of the departmental budget.
It has been asserted that the Commission has greater authority over the personnel and budget of the Division than this opinion finds, based in part of findings of the Colorado Supreme Court in Submission ofInterrogatories on Senate Bill 93-74, 852 P.2d 1 (Colo. 1993). The Court was asked by the General Assembly to decide whether the Taxpayer's Bill of Rights ("TABOR") permitted the General Assembly to enact limitations on revenues collected by the Commission *Page 6 
pursuant to the Limited Gaming Control Amendment. The court affirmed that the Commission and not the General Assembly has authority to establish the annual percentage of adjusted gross revenues to be collected from limited gaming licensees. In re: Senate Bill 93-74, 852 P.2d at 14-15. This decision was based on "the plain language" of section (5)(a) of the Limited Gaming Amendment, which states that this "percentage shall be established annually by the commission according to the criteria established by the general assembly. . . ." Id. From this unremarkable decision, some have extrapolated a much broader and unfettered power of the Commission to control every aspect of limited gaming including the day-to-day operations of the Division of Gaming. Nothing in the state Supreme Court's opinion or in the constitution or statute bears out such an expansive interpretation of the Commission's authority over functions of the Division, when the Division and Commission are under and within the Department of Revenue, an executive branch agency.
Finally, it has been argued that the Commission's sole authority to promulgate rules and regulations related to limited gaming, and specifically related to the payment of costs incurred in the operation and administration of the division, creates an inference that the Commission has autonomous control over the Division and Commission budgets. This position arguably is bolstered by the fact that payments from the Limited Gaming Fund may be made only upon proper presentation of a voucher prepared by the Commission. C.R.S. § 12-47.1-701(b).
This argument goes far beyond any statutory authority given to the Commission, however. The grant of rulemaking authority to the Commission is confined to regulations "governing the licensing, conducting and operating of limited gaming." C.R.S. § 12-47-302(1)(a). It cannot be read to extend the Commission's administrative control to the Division's personnel and budget. To do so would require an intentional disregard of the constitutional and statutory authority of the Department, as an executive agency, over the hiring and firing of Division personnel and its ultimate control of the budget process.
CONCLUSION
For the reasons indicated above, I conclude that the Department of Revenue controls the budget and personnel of the Division of Gaming. The Colorado Limited Gaming Control Commission must approve the budget, but preparation of and final authority for that budget rests with Department acting on the Governor's behalf.
Issued this 24th day of July, 2006.
_________________________
JOHN W. SUTHERS
Colorado Attorney General
[1] At the time of this opinion, Michael Cooke is Executive Director of the Department of Revenue and Paul Doyle serves as Chief Financial Officer. They are responsible for providing details of the Department's budgeting process for this opinion. *Page 1